**Arthur Ben LEWIS, Jr., Petitioner-Appellee,**

v.

**Harold J. CARDWELL, Warden, Respondent-Appellant.**

**No. 72–1679.**

United States Court of Appeals, Sixth Circuit.

Argued Dec. 8, 1972.

Decided April 5, 1973.

Jeffrey L. McClellant, Asst. Atty. Gen., for respondent-appellant; William J. Brown, Atty. Gen. of Ohio, on brief.

Bruce A. Campbell (Court-appointed), Campbell, Boyland & Schwarzwalder, Columbus, Ohio, for petitioner-appellee.

Before PHILLIPS, Chief Judge, and WEICK and MILLER, Circuit Judges.

WILLIAM E. MILLER, Circuit Judge.

This appeal is before the Court for review of a judgment and order of the district court conditionally granting a writ of habeas corpus pursuant to the power vested in that court by 28 U.S.C.

§ 2241.[1] The case arises from a brutal shotgun slaying for which the appellee, Arthur Ben Lewis, Jr., was indicted, tried and subsequently found guilty of first degree murder by a state trial court jury. It is well to remember that this Court's sole duty in this case, as in all similar cases, is to determine whether the petitioner's constitutional rights were violated, regardless of the evidence pointing to the guilt of the accused.

The single issue presented for resolution is the correctness of the District Court's holding that the appellee's fourth and fourteenth amendment rights were violated by the admission at his trial of evidence obtained from a warrantless seizure and subsequent search of his automobile. The District Court's exhaustive and comprehensive opinion is reported in 354 F.Supp. 26 (S.D.Ohio 1972). Since we are in full agreement with the opinion, we find it unnecessary to do more than to emphasize and further clarify several points made below. Only the skeletal facts relevant to the single search and seizure question need be summarized here.

During the course of investigating this July 19, 1967, slaying, the law enforcement officers focused their attention on the appellee. On July 24, 1967, Delaware County Deputy Sheriff Lavery, one of the officers assigned to the case, talked with the appellee at his place of business and at that time viewed his 1966 Pontiac automobile. From other information gathered in the investigation Lavery believed that the appellee's car had been used to push the murder victim's automobile over a river embankment at the scene of the crime. On September 28, 1967, Deputy Lavery and an official from the State Attorney General's office again interviewed the appellee and on October 9, 1967, the appellee was contacted by telephone and requested to appear the next day at the offices of the Division of Criminal Activities in Columbus, Ohio, for further questioning. Early the next morning, October 10, 1967, Deputy Lavery obtained a warrant for the appellee's arrest but did not attempt to procure a warrant for the search of his car.

The appellee arrived at the offices of the State Attorney General shortly after 10:00 A.M. October 10, 1967, where several staff members of the Division of Criminal Activities and Deputy Lavery questioned the appellee for a substantial part of the day. The arrest warrant was not served on the appellee until approximately 5:00 P.M. that afternoon, an event which occurred shortly after the arrival of his attorneys. Around the time of appellee's arrest the law enforcement officials obtained the keys and the claim check for the appellee's car which was parked in a pay parking facility about a half block from the state offices.[2] One of the state officials then called a wrecker to seize the automobile. The seizure was effected in this manner, with the result that none of the investigators personally viewed the vehicle or ascertained whether the car was in fact parked in the lot. The seizure was made without obtaining a warrant.

A lab technician viewed the car in the impounding lot on October 11, 1967, and searched the trunk of the car. He also

---

1. The district court opinion states:
   Accordingly, it is *ordered* that the writ of habeas corpus issue ninety days after the filing of this Opinion and Order, and that petitioner be released from custody, unless within such ninety day period State officials initiate action for a new trial of petitioner. If State officials initiate action for a new trial, it is *ordered* that no writ of habeas corpus shall issue. Lewis v. Cardwell, 354 F.Supp. 26 (S.D.Ohio (1972).

2. The district court found that the keys were actually obtained from the appellee's attorney who relinquished them to the state officials under protest to avoid a physical confrontation. The full details of this incident are recounted in the lower court's opinion. What is important for our purposes is that the court found that the appellee did not consent to the seizure and search of his automobile. This finding is not clearly erroneous.

removed paint samples from the exterior surface of the appellee's automobile, consisting of the outer coat of paint and the two primer coats underneath. At the appellee's trial this technician testified that he found no difference in the color, texture or the order of layering of paint of these samples as compared with foreign paint marks found on the victim's car.

The respondent raises three grounds in attempting to support the warrantless seizure and subsequent search of the appellee's automobile: first, that the search of the automobile was with the consent of the appellee; second, that the search was incident to a valid arrest; and third, that the vehicle itself was an instrumentality of the crime in plain view which the officers had probable cause to believe was used in the commission of a felony. As a corollary to the third contention, the respondent claims that no search was in fact conducted since no items were seized from the interior of the car but rather that the paint scrapings were removed from the exterior surface of the vehicle as a result of a scientific examination of an instrumentality of the crime.

The district court's finding, which we deem to be correct, that the first two contentions were without merit is so fully discussed in its opinion that nothing further need be said with respect to these issues. We confine ourselves to some additional observations concerning respondent's third contention.

Initially, what may be termed a point of semantics needs clarification. The respondent's use of the term "instrumentality of the crime" is an attempt to raise the ghost of an outmoded concept which was laid to rest by the Supreme Court in Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), where the Court dispensed with the "mere evidence" distinction which had worked its way into the law of search and seizure. Mr. Justice Brennan's words deserve repetition:

> Nothing in the language of the Fourth Amendment supports the distinction between "mere evidence" and instrumentalities, fruits of crime, or contraband. On its face, the provision assures the "right of the people to be secure in their persons, houses, papers, and effects . . .," without regard to the use to which any of these things are applied. This "right of the people" is certainly unrelated to the "mere evidence" limitation. Privacy is disturbed no more by a search directed to a purely evidentiary object than it is by a search directed to an instrumentality, fruit, or contraband. A magistrate can intervene in both situations, and the requirements of probable cause and specificity can be preserved intact. Moreover, nothing in the nature of property seized as evidence renders it more private than property seized, for example, as an instrumentality; quite the opposite may be true. Indeed, the distinction is wholly irrational, since, depending on the circumstances, the same "papers and effects" may be "mere evidence" in one case and "instrumentality" in another. 387 U.S. at 301–302, 87 S. Ct. at 1647.

Mr. Justice Stewart also reiterated the demise of the "instrumentality of a crime" and "mere evidence" distinction in Coolidge v. New Hampshire, 403 U.S. 443, 464, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

The respondent's third contention is thus premised on an unwarranted assumption. As aptly stated by the district court: "The instrumentality theory assumes that any object used in the commission of a crime may be seized *at any time* without a warrant as long as the officers have probable cause to believe that the object was used in the commission of a crime and the officers are lawfully in a position to view the object." 354 F.Supp. at 41. We fully approve the district court's answer to this premise: "The police cannot seize an automobile on the theory that it is an instrumentality of a crime which is in plain view in calculated disregard for the Fourth Amendment requirement that application be made to a judicial officer for a search warrant absent exi-

gent circumstances." 354 F.Supp. at 41. Since no exigent circumstances existed in this case the respondent's instrumentality theory must fail.[3]

■ The district court indicates that for purposes of deciding the case it is "assuming" that the officers were in a position legally to apply the plain view exception to the warrant requirement. However, the facts of this case clearly establish that even though the officers had probable cause to seize appellee's automobile they in fact never observed the vehicle at all but rather merely dispatched a wrecker to the site where they believed the car was parked. Stated in its simplest form there can be no "plain view" when there is no "view" at all. To attach such an extension to the plain view exception to the warrant requirement would undercut the very foundations of fourth amendment protections and consequently such a proposition is untenable. It is for this very reason that Mr. Justice Stewart, in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), emphasized the importance of inadvertence in discovering the evidence when applying the plain view doctrine. We are in accord with this reasoning.[4] Hence, when law enforcement officers have prior knowledge amounting to probable cause establishing the nexus between the article sought and the place of seizure a warrant must be obtained in order to protect the fourth amendment principle that warrantless seizures are *per se* unreasonable in the absence of exigent circumstances.

■ The respondent's contention that no search was in fact conducted of the vehicle because the paint scrapings were removed from the exterior surfaces of the car during a scientific examination of evidence of the crime is also untenable. This reasoning is unsound because it is based on the premise that the car was properly seized without a warrant —a contention which we have held to be incorrect under any of the theories advanced by the respondent.[5] Also we cannot agree that standing alone, the police actions involving the vehicle were not a search. As correctly stated by the district court in footnote 10 of its opinion:

Respondent also apparently argues that there was no search and seizure

---

3. The district court spells out the lack of exigent circumstances at several points in its opinion. Of particular significance is the fact that the police had planned for several weeks to seize the vehicle but made no effort to obtain a warrant.

4. The Court is cognizant of the fact that Part II C of Mr. Justice Stewart's opinion was only concurred in by three other justices. However, another justice, Mr. Justice Harlan did concur in the judgment in that case and consequently the evidence seized from the Coolidge automobile was suppressed. Further, Mr. Justice Harlan concurred in Part II D of Mr. Justice Stewart's opinion, a section specifically designed to counter the arguments "that can be made against our interpretation of the 'automobile' and 'plain view' exceptions to the warrant requirement." Coolidge v. New Hampshire, 403 U.S. 443, 473, 91 S.Ct. 2022, 2042, 29 L.Ed.2d 564 (1971).

This Court has accepted the full reasoning of Mr. Justice Stewart's opinion concerning the plain view and automobile exceptions just last year in Cook v. Johnson, 459 F.2d 473 (6th Cir. 1972). We reaffirm the correctness of that position. See Annot., 29 L.Ed.2d 1067, 1073–1078 (1972).

5. This same error appears in the Ohio Supreme Court's opinion on the appellee's appeal, State v. Lewis, 22 Ohio St.2d 125, 258 N.E.2d 445 (1970). There the court, relying on People v. Teale, 70 Cal.2d 497, 75 Cal.Rptr. 172, 450 P.2d 564 (1969), upheld the search as proper since the car was an instrumentality of the crime. However, the Ohio Supreme Court failed to note that in *Teale* the initial seizure of the automobile was justified as being incidental to the defendant's arrest.

Respondent's reliance upon Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967) is misplaced since the underlying premise of the Supreme Court's holding in that case was that the initial seizure of the vehicle was properly made pursuant to the California Narcotics statute, providing for seizure and forfeiture proceedings. Therefore, the seizure was not constitutionally infirm.

because the only thing seized—paint —was from the exterior of the car. No cases are cited supporting this novel proposition. Admittedly, testimony .describing the exterior color of the car would not run afoul the Fourth Amendment if the witness had lawfully been in a position to observe its color. However, the intrusion herein was not limited to an observation of the exterior of the automobile. A search was conducted of the layers of paint beneath the visible surface of the vehicle. 354 F.Supp. at 35.

In our view the action of the police lab technician in lifting the layers of paint from the exterior car body was as much a search as his opening the trunk of the vehicle.[6]

The judgment of the district court is affirmed.

6. On this appeal the respondent cites two cases which he considers analogous to the police actions here. Both cases involve the police obtaining a vehicle's serial number by opening the door of a car already properly in police custody. In both cases the police acted without a warrant.

In United States v. Graham, 391 F.2d 439, 442 (6th Cir. 1968), this Court stated:

Where police obtain an article for *safekeeping* from a suspect taken into custody pursuant to a lawful arrest, we find no authority which requires them to get a search warrant before *examining the article for the purpose of finding a serial number by which the article might be accurately identified.* [Emphasis added].

This Court went on to hold:

It is here concluded and held that an examination of an automobile *properly* in police custody is not a search thereof, and that evidence of the *serial number* of such car is not excludable from evidence because it was obtained in the course of such an examination. 391 F.2d at 443 [Emphasis added].

This Court relied on Cotton v. United States, 371 F.2d 385 (9th Cir. 1967), in *Graham, supra.* In *Cotton* the Ninth Circuit stated:

They [the police] also had a duty to keep a record of the property that they had impounded so that it could be re-

turned to the suspect or to its owner in due course. For reasons stated below, we do not think that the mere opening of the door of the car for the purpose of making such a record was, under the circumstances, a search, but if it was, the circumstances under which it was done make that search an entirely reasonable one. 371 F.2d at 392.

The court in *Cotton, supra,* also specifically limited its holding, stating:

When Cotton acquired the car, the serial number and motor number came with it. And we would limit the right to check [the identification number] to those cases in which there is a legitimate reason to do so. 371 F.2d at 393. *See also,* United States v. Pearson, 448 F.2d 1207 (5th Cir. 1971) ; United States v. Johnson, 431 F.2d 441 (5th Cir. 1970).

We would note that other courts have held that obtaining vehicle serial numbers by opening a car door under similar circumstances is an illegal search. *See, e. g.,* Simpson v. United States, 346 F.2d 291 (10th Cir. 1965).

The *Graham* and *Cotton* cases are clearly distinguishable from the instant case. In both cases the vehicles were already properly in police custody—a situation different from the facts before us. Also both *Graham* and *Cotton* were Dyer Act cases and are limited to the situation where the police obtained the *serial* number of cars for identification purposes.