UNITED STATES of America,
Plaintiff-Appellant,

v.

William Bruce HARE,
Defendant-Appellee.

No. 78–5220.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 19, 1978.

Decided Jan. 8, 1979.

James K. Robinson, U. S. Atty., Detroit, Mich., Thomas W. Cranmer, Birmingham, Mich., for plaintiff-appellant.

William Van Dusen, Jr., Richard Lustig, Michael S. Friedman, Southfield, Mich., for defendant-appellee.

Before EDWARDS and CELEBREZZE, Circuit Judges and PECK, Senior Circuit Judge.

PECK, Senior Circuit Judge.

This case raises the question of the meaning of the "inadvertence" requirement of the plain view exception to the warrant requirement, as set out in *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). The district court granted the defendant's motion to exclude evidence seized from his home, and the Government has appealed, contending that the district court applied the wrong standard when it concluded that the discovery of the narcotics was not inadvertent. We agree, and reverse the district court's suppression order.

## THE INVESTIGATION, SEARCH AND SEIZURE

On September 7, 1976, the defendant was arrested by a city police officer in Redford Township, Michigan, and was discovered to be in possession of a Smith and Wesson revolver, which was registered to another person. This triggered an investigation by Special Agent Quearry, of the Federal Bureau of Alcohol, Tobacco and Firearms. Over the course of the next few weeks, with the help of several confidential informants, Agent Quearry gathered evidence that Hare was involved in the transportation of substantial quantities of firearms into Michigan without a license. In the course of his investigation, Quearry contacted the Drug Enforcement Administration, and discovered that DEA Agents Fling and Crep were investigating Hare for suspected narcotics violations. Three months after Hare's arrest, and after an extensive investigation, Quearry obtained a search warrant which authorized "any special agent of the Bureau of Alcohol, Tobacco and Firearms" to search Hare's home for an unknown quantity of firearms, ammunition, a sawed-off shotgun and a machine gun, all allegedly possessed in violation of federal criminal statutes.

The warrant was executed under Quearry's supervision, by six other ATF agents, and three DEA agents, including Agents Fling and Crep. At the suppression hearing Quearry testified that the DEA agents were asked to accompany the ATF agents to supply additional manpower, and to assist in identifying narcotics in the event that any were found in the course of the search.

The search was actually conducted by the ATF agents, while the DEA guarded the doors to the dwelling. Nineteen guns and a substantial amount of ammunition were seized, and the agents also discovered drugs and drug paraphernalia. In the living room on a table the agents found phencyclidine tablets, marijuana, white powder (later proved to be a narcotic), a cocaine cutting board and a metal strainer. In a kitchen cabinet, three bags of white powder (later proved to be cocaine) were discovered. The DEA agents took possession of the drugs and drug paraphernalia, which formed the basis of this drug distribution prosecution.

## THE DISTRICT COURT'S RULING

Since the federal agents had no warrant to search for and seize narcotics, the Government relied on the plain view exception to the warrant requirement in arguing that the evidence of drug violations was lawfully seized and admissible. The defendant contended that the plain view exception only applies when the discovery is inadvertent, in the sense that it is unexpected and unplanned, relying on *Coolidge v. New Hampshire, supra,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564. This seizure, he argued, was both expected and planned, and was thus unlawful in the absence of a warrant. In any case, he argued, the search was rendered unlawful by the participation of the DEA agents, contrary to the direction in the warrant.

The district court agreed with the defendant, and held that the evidence was inadmissible. It found:

> [T]he agents in this case expected to find drugs at the residence, and this expectation supplied at least some impetus for the search. Furthermore, the Court finds that the warrant was executed with the intention of seizing any drugs found in plain view and thus was used, at least in part, as a pretext or subterfuge to search for evidence of drug violations.

The district court went on to observe:

> [I]t is impossible for the Court to conclude that the finding here was inadvertent. On the other hand, the Court cannot conclude that the agents *knew* that they would discover evidence of drug violations in the course of the search.

In applying the *Coolidge* plain view standards to his findings, the district judge recognized that "this case involves a fact situation which does not fall neatly within the holding of *Coolidge*." However, he concluded that a planned warrantless seizure is illegal under *Coolidge* whether that plan is based on knowledge or expectation, transforming the limited, narrow search contemplated by the warrant clause of the constitution into an illegal general exploratory search.

## COOLIDGE: "INADVERTENCE"

Our consideration of this case begins with the most basic constitutional rule in search and seizure law: "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). For the most part, these exceptions are based upon a conclusion that under certain circumstances, the exigencies of a situation make immediate search and seizure without benefit of a warrant imperative. The plain view doctrine is one of those exceptions, and it is well-established that when a police officer, with a prior justification for a search in progress, inadvertently comes across contraband or an incriminating piece of evidence, a warrantless seizure is permitted. *Coolidge v. New Hampshire, supra,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564. While *Coolidge* made it clear that "inadvertence" is required under the plain view doctrine, and devoted a considerable amount of space to the subject, the term is not defined in the opinion. The district court interpreted the phrase to mean "unexpected," or "unanticipated," and given the facts of this case, was wholly justified in concluding that the discovery of narcotics was not unexpected. However, after a careful reading of *Coolidge*, we conclude that "unexpected" was not what the Supreme Court intended when it held that a plain view discovery must be inadvertent. We reverse, holding that the evidence was legally seized under the facts of this case, and is admissible.

We note, first of all, that whatever the Supreme Court meant by its use of "inadvertent," it was probably not "unexpected" or "unanticipated." The word does not mean unexpected; its root meaning is "not to turn toward," and it means heedless, inattentive or unintentional. *Oxford English Dictionary* (1971 ed.). We think it most likely that the Supreme Court had the last meaning in mind in its use of the word,

since that meaning emphasizes a close link between the inadvertence requirement and the constitutional limitation on the scope of a search. A search must be as narrow as possible, and a police officer may not search places where the legitimate object of his search will not be found. A warrant for moonshine whiskey will not authorize a search of a briefcase or purse. A search must be limited to the scope of the warrant, and the police officer must intend to search for the items specified therein; but if, in the course of such a properly limited search, the officer comes across other incriminating evidence, which he did not *know* he would find and thus did not intend to seize, its discovery is inadvertent.

■ Interpreting *Coolidge* is not an easy task, but it appears on careful reading that the Court meant only to condemn warrantless seizures when a warrant could have been obtained—in other words, when the exigency which normally accompanies a plain view seizure is not present. Ordinarily, in the course of an otherwise permissible search, if the police unexpectedly come across evidence, it would be likely to disappear or be destroyed if the police then had to obtain a warrant before seizure. In the words of *Coolidge*, "as against the minor peril to Fourth Amendment protections, there is a major gain in effective law enforcement" if seizure is permitted under these circumstances. However, if the police had probable cause to believe they would find the evidence or contraband *before* making the seizure, and had an opportunity to obtain a warrant, any exigency which results is of their own making, and cannot serve as grounds for a warrantless seizure.

■ We conclude, then, that "inadvertence" in this context means that the police must be without probable cause to believe evidence would be discovered until they actually observe it in the course of an otherwise-justified search. There are many times when a police officer may "expect" to find evidence in a particular place, and that expectation may range from a weak hunch to a strong suspicion. However, the Fourth Amendment prohibits either a warrant to issue or a search based on such an expectation. Yet if in the course of an intrusion wholly authorized by another legitimate purpose, that hunch or suspicion is confirmed by an actual observation, the police are in precisely the same position as if they were taken wholly by surprise by the discovery. The same exigent circumstances exist, and no warrant could have been obtained before the discovery.

■ This reading of the inadvertency requirement is supported by *Coolidge* itself. The thrust of the discussion is aimed at condemning seizures ostensibly made under the plain view doctrine, when the police could have, but failed to, obtained a warrant first. For example, after pointing out that the plain view doctrine was only applicable if the initial intrusion was justifiable on some independent grounds, the Supreme Court went on:

The second limitation is that the discovery of evidence in plain view must be inadvertent. The rationale of the exception to the warrant requirement, as just stated, is that a plain-view seizure will not turn an initially valid (and therefore limited) search into a "general" one, while the inconvenience of procuring a warrant to cover an inadvertent discovery is great. But where the discovery is *anticipated*, where the police *know in advance* the location of the evidence and intend to seize it, the situation is altogether different. *The requirement of a warrant to seize imposes no inconvenience whatever*, or at least none which is constitutionally cognizable in a legal system that regards warrantless searches as "*per se* unreasonable" in the absence of "exigent circumstances."

*Coolidge*, 403 U.S. at 469–470, 91 S.Ct. at 2040 (emphasis added). Obviously, the emphasized phrases are only relevant if the Supreme Court is talking about situations in which the police have probable cause and thus *could* have obtained a warrant; otherwise, procurement of a warrant would not only be inconvenient, but impossible. Note also that the Court, in discussing a seizure which lacks inadvertence, uses the phrases

"anticipated," and "know in advance." This indicates more than a mere expectation.

In applying the facts of *Coolidge* to its analysis, the Court focused on the fact that the police had simply neglected to obtain a warrant with no excuse; thus there was no "exigency" created when the automobile came into plain view:

> In light of what has been said, it is apparent that the "plain view" exception cannot justify the police seizure of the Pontiac car in this case. The police had ample opportunity to obtain a valid warrant; they knew the automobile's exact description and location well in advance; they intended to seize it when they came upon Coolidge's property.

*Id.* at 472, 91 S.Ct. at 2041. Later, the Court noted:

> Since the police knew of the presence of the automobile and planned all along to seize it, there was no "exigent circumstance" to justify their failure to obtain a warrant. The application of the basic rule of Fourth Amendment law therefore requires that the fruits of the warrantless seizure be suppressed.

*Id.* at 478, 91 S.Ct. at 2044.

At first, it may seem illogical to hold that police who lawfully enter premises and discover evidence which is not described in their warrant, in the course of a properly limited search, may not seize it if they *knew* they would find it before entering, but may seize it if they only thought they might find it, or if they discover it unexpectedly. After all, the line between suspicion and probable cause is seldom very clear. It makes sense, however, if the fact is kept in mind that a warrant is normally required before a search can be conducted or a seizure effectuated, and if it is remembered that the only reason plain view seizures are permitted at all is because the intrusion which the Fourth Amendment seeks to guard against has already lawfully occurred, and the police are faced with a situation in which they observe evidence which they could not have obtained permission to seize, and which now is likely to disappear or be destroyed if they

stop and leave to obtain a new warrant. This is the "exigency" which underlies the plain view doctrine, and without this exigency the entire rationale falls. We note that the police cannot create their own exigency by simply failing to obtain a warrant until they are faced with the evidence.

We are further supported in our analysis of *Coolidge* by the fact that the district court's reading would force the police to take action (obtaining a second warrant) which would do nothing to promote the individual's privacy interests, and would greatly handicap the interests of police safety and efficiency. If "inadvertent" is interpreted as "unexpected," an absurd scenario would take place every time the police execute a search warrant on the premises of a person suspected of engaging in a variety of criminal activities, but when they have probable cause (and a warrant) to search for the fruits of only one crime. In such a case, whenever evidence of one of these other crimes turns up, even though it would have been impossible to obtain a warrant previously, someone must be sent to obtain a new warrant to authorize the seizure. It is even questionable whether the police would be authorized to remain until the new warrant is obtained, securing the premises against possible destruction of the evidence, since their right to be on the property lapses as soon as they have completed the search authorized by the warrant. At the same time, the intrusion has already occurred in a fully legal, limited manner, so Fourth Amendment interests are not served by delay. The courts do try to avoid imposing significant limitations and burdens on the ability of the police to do their job when those burdens would serve no purpose. We conclude that unless the police had the ability and opportunity to obtain a warrant prior to the seizure and failed to do so, the inadvertency requirement of the plain view doctrine has not been violated.

This conclusion is supported by prior decisions, both of this Circuit and others. In *Lewis v. Cardwell*, 476 F.2d 467 (6th Cir. 1973), a car parked in a public garage was

seized without a warrant. The Court held that the seizure was not justified under the plain view doctrine, because the discovery of the car was not inadvertent:

> [W]hen law enforcement officers have prior knowledge amounting to probable cause establishing the nexus between the article sought and the place of seizure a warrant must be obtained in order to protect the fourth amendment principle that warrantless seizures are *per se* unreasonable in the absence of exigent circumstances.

*Id.* at 470.* The Fifth Circuit, in *United States v. Bolts*, 558 F.2d 316 (5th Cir. 1977), held that a passport discovered on a bookcase during a warrantless arrest was legally seized under the plain view doctrine:

> This case does not present a situation where an agent has maneuvered himself into a position in order to discover evidence he was seeking. The discovery of the passport, although a foreseeable possibility, was unplanned and inadvertent. What *Coolidge* proscribes is an anticipated discovery, where the police know in advance the location of the evidence and intend to seize it. Here the agent had a legitimate reason for being in the room, he came upon the passport inadvertently and it was immediately apparent to him that the passport constituted evidence of the conspiracy. Even if the DEA agent had expected to find the passport—and the evidence does not suggest that they did—that would not have destroyed the necessary inadvertence to satisfy *Coolidge*.

*Id.* at 320 (citations omitted).

There is no indication in the record in this case that the federal agents were attempting to use the plain view doctrine as a ploy to evade the warrant requirement. It does not appear that the DEA agents could have obtained a warrant for narcotics, though it is clear that both the DEA agents and the ATF agents expected that some drugs

might be found. There is perhaps, as the district court found, a hint of subterfuge here; a suggestion that the DEA was using ATF to gain access to a residence which they could not search on their own. But criminal investigations are not a game, and the DEA doesn't lose simply because it did not earn all its points itself. This was clearly a serious, valid investigation on the part of the ATF of suspected gun-running; there is absolutely no evidence that the warrant and search for weapons was a pretense fabricated to mask the DEA's lack of probable cause.

## PARTICIPATION BY THE DEA

■ The defendant further contends that even if the discovery of the narcotics was "inadvertent" within the meaning of *Coolidge*, the search was still illegal because of the participation of the DEA agents. The warrant was specifically addressed to "any special agent of the Bureau of Alcohol, Tobacco and Firearms," and the defendant argues that the first requirement of the plain view doctrine, that the agents must have a right to be in the place from which the evidence is observed, has not been satisfied. He relies on our decision in *United States v. Sanchez*, 509 F.2d 886 (6th Cir. 1975), which held that a seizure of explosives by federal officers could not be justified under the plain view doctrine when the seizure was made during a search authorized by a state warrant, directed to state officers, and based on probable cause to believe narcotics would be found in the house.

There is language in *Sanchez* to lend support to the defendant's position, but the case turned on exactly the same distinction relied on in the preceding section. Because the federal officers had probable cause and opportunity to obtain a warrant before the search, their participation transformed the search from a single, valid search for nar-

---

* *Lewis* was reversed by the Supreme Court, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974), on other grounds. The Supreme Court concluded that the .examination of the exterior of an automobile with probable cause does not

constitute a "search" within the meaning of the fourth amendment, and that exigent circumstances did in fact exist in the case because of the inherent mobility of an automobile parked in a public place.

cotics into two simultaneous searches; one for narcotics and one illegal, warrantless search for explosives:

> The government contends that its agent was rightfully on the premises because he had accompanied local police at their request when they had executed a valid narcotics search warrant. We find this argument unpersuasive. We believe that the warrant authorized only the local officers to enter and search the Sanchez property for narcotics. It could not be used to validate the entrance of a federal officer having both probable cause and the opportunity to obtain a separate warrant to search for different items of property.

> \*   \*   \*   \*   \*   \*

> Here the federal agent had probable cause to suspect the presence of explosives in the defendant's house, and he had the opportunity to procure a proper warrant. Instead of doing so, he chose to ignore the warrant requirement and to enter the premises with local officers who were conducting a search for unrelated property. Such action circumvents the safeguards of the federal Constitution.

> \*   \*   \*   \*   \*   \*

> When a law enforcement officer has prior knowledge of the existence and location of property which he has probable cause to believe is illegally possessed, as well as ample opportunity to obtain a judicially sanctioned search warrant, the Fourth Amendment mandates that he must follow this procedure. If he fails in this duty, he may not proceed on the authority of another unrelated warrant to justify his intrusion. Because the A.T.F. agent had no right to be on the Sanchez premises during the raid, he did not satisfy the threshold requirement of the plain view doctrine and thus his warrantless seizure of the explosives was unconstitutional.

*United States v. Sanchez, supra,* 509 F.2d at 889, 890 (citations omitted). The existence of probable cause before the search transformed the legitimate participation of trained officers to assist in the event of discovery of dangerous explosives into an inexcusable attempt to evade the warrant requirement, because it eliminated the exigent circumstances.

We further note that the ATF agents had statutory authority to ask the assistance of DEA agents in executing this warrant. The presence of the DEA agents at the ATF agents' request is specifically authorized by 18 U.S.C. § 3105 which provides:

> A search warrant may in all cases be served by any of the officers mentioned in its direction or by an officer authorized by law to serve such warrant, but by no other person, except in aid of the officer on his requiring it, he being present and acting in its execution.

26 U.S.C. § 5557 makes section 3105 applicable to ATF agents. Thus, this case is distinguishable from the other case relied on by the defendant, *United States v. Warren,* 550 F.2d 219 (5th Cir. 1977). In that case, DEA agents boarded a vessel along with officers of the Coast Guard. Though they suspected the boat was smuggling narcotics, they did not have probable cause to search for drugs. They attempted to justify their presence and their search of the vessel by arguing that the Coast Guard is authorized to make safety inspections at any time. The Fifth Circuit agreed that the Coast Guard was permitted to stop and search a vessel for safety violations without probable cause, but went on to hold:

> Error was committed, however, by the fact that the Coast Guard boarding party consisted not solely of three Coast Guardsmen, but also of agents from the [DEA] and Customs. All evidence derived from the search of the Stormy Seas was a product of the efforts of these two agents. This evidence was unconstitutionally obtained for two reasons. First, nowhere in 14 USC § 89(a) is the Coast Guard authorized to delegate its authority to stop and search a vessel to members of other branches of the Federal Government. Therefore, any evidence derived from the efforts of these two agents was unconstitutionally obtained. *The two agents had absolutely no authority to board the Stormy Seas.*

*Id.* at 225 (emphasis added). In this case, in contrast to the limited Coast Guard authorization to make safety checks, the ATF is both authorized to execute search warrants and to authorize others to assist in the execution of a search warrant, so long as the person designated in the warrant is present and participating in its execution. Furthermore, DEA agents are authorized to execute and serve any search warrant issued under authority of the United States. 21 U.S.C. § 878(2). Thus, the DEA agents were lawfully present at the search of the defendant's home.

We conclude that the evidence which defendant seeks to suppress was seized while it was in plain view during a legal search for firearms. We conclude that the discovery was "inadvertent" within the meaning of *Coolidge*, and that the DEA agents lawfully participated in the search. Thus the decision of the district court granting defendant's motion to suppress is reversed.