448 So.2d 713 (1984)
STATE of Louisiana
v.
John HOWARD and Carl Hill.
No. 83 KA 0796.
Court of Appeal of Louisiana, First Circuit.
February 28, 1984.
Writ Denied May 4, 1984.
*715 Ossie B. Brown, Dist. Atty., by Richard Chaffin, Asst. Dist. Atty., Baton Rouge, for plaintiff-appellee.
Frank Gremillion, Baton Rouge, for defendants-appellants.
Before LOTTINGER, EDWARDS and ALFORD, JJ.
LOTTINGER, Judge.
Defendants John Howard and Carl Hill were charged by grand jury indictment with three counts of violation of La.R.S. 40:967 A: Count 1, possession with the intent to distribute methaqualone; Count 2, possession with intent to distribute marijuana; Count 3, possession with intent to distribute cocaine. Defendants pled not guilty, were tried jointly by a jury and found guilty as charged on each count.
Defendant Howard was sentenced as follows: on Count 3, to hard labor for a period of ten years without benefit of probation, parole or suspension of sentence, with credit for time served and to pay a fine of $3,000.00 and costs of court or, in default of payment thereof, to be confined in the East Baton Rouge Parish prison for a period of six months; on Count 2, to ten years at hard labor to run concurrently with Counts 1 and 3; and Count 1, to ten years at hard labor to run concurrently with Counts 2 and 3.
Defendant Hill was sentenced as follows: on Count 3, to hard labor for a period of ten years without benefit of probation, parole or suspension of sentence, with credit for time served and to pay a fine of $1,500.00 and costs of court or, in default of payment thereof, to be confined in the East Baton Rouge Parish prison for a period of ninety days; on Count 2 to imprisonment at hard labor for a period of ten years to run concurrently with Counts 1 and 3; and Count 1, to imprisonment at hard labor for ten years to run concurrently with Counts 2 and 3. Defendants now appeal their convictions and sentences, alleging five assignments of error and briefing two.

ASSIGNMENTS OF ERROR
1. The trial court erred when it denied defendants' motion to suppress evidence.
2. The trial court erred when it allowed into evidence the testimony of a witness, Deputy Kuntz, concerning other evidence obtained by the police which was apparently not admissible at trial.
3. The trial court erred when it denied defendants' motion for new trial.
4. The trial court erred when it denied defendants' motion in arrest of judgment.
5. The trial court erred when it imposed an excessive sentence on defendants.
In brief, defendants have argued only Assignments of Error Nos. 1 and 2. Therefore, Assignments of Error Nos. 3, 4, 5 are considered abandoned. Rule 2-12.4, Uniform RulesCourts of Appeal.

FACTS
Defendant John Howard lived with his wife, Linda Howard, and Linda's 15 year old son by a former marriage, Mark Taylor. Defendant Carl Hill, Linda's brother, had just moved from Virginia and was staying *716 with the Howards until he found employment.
For some two months prior to the defendants' arrests, the Howard home had been under partial surveillance by the East Baton Rouge Sheriff's Office. This was a result of information obtained by the sheriff's office that Mark Taylor was dealing drugs at a nearby convenience store and that Linda Howard was deeply involved in narcotics traffic. Ms. Mary Kuntz, a young member of the narcotics division of the sheriff's office, was assigned an undercover role to investigate.
Ms. Kuntz made Mark's acquaintance and on April 9, 1981, visited Mark at the Howards in the early afternoon. Mark and Ms. Kuntz were alone because John Howard was at work and Carl Hill had driven to Florida to pick up Linda. Deputy Kuntz and Mark shared two marijuana cigarettes in Mark's room; they were taken from a plastic bag kept in his dresser drawer which held approximately one ounce of the drug. Mark gave Ms. Kuntz a small sample from the bag and then placed it back in his dresser drawer.
Mark told her however, that his mother, Linda, was due back from Florida with more drugs, including cocaine and quaaludes (Methaqualone).
At about 4:00 p.m. that afternoon, Deputy Kuntz reported the above to her narcotics division captain, who, with Kuntz, swore out an affidavit for the issuance of a search warrant.[1] A search warrant was issued authorizing a search of the Howard residence for "a quantity of controlled dangerous substance to wit: Marijuana."
A raiding party of seven or eight sheriff's deputies, including deputy Kuntz, watched the Howard residence from concealed locations. Around 10:30 p.m. Linda Howard's Oldsmobile drove up to the house. The officers saw some suitcases being unloaded; they waited 20 minutes and then decided to enter (except for Ms. Kuntz who stayed behind in a van). Police knocked and declared their identity. Receiving no reply, the officers then began to kick and beat the door with a maul. Shots were fired from the house. John Howard finally let the deputies inside. They immediately handcuffed him and Mark; Hill and Ms. Howard were subdued a little later. Later testimony revealed that the Howards thought they were being burglarized as they had been before. Ms. Howard was found by the deputies to be on the phone to the police reporting a break-in.
The deputies then proceeded to search the house for drugs. In the master bedroom one suitcase was found on the floor and another in a closet. Both were locked and both were forcibly pried open by the deputies. Approximately one pound of cocaine and 30,000 quaaludes were found inside. A brown paper-wrapped package was found in a closet in the same room; a deputy slit it open and found a bale of marijuana.
Sometime after the bulk of the drugs was found, deputy Kuntz was called in from the surveillance van. She then went to Mark Taylor's room and retrieved the small bag of marijuana which she had seen that afternoon.
Small samples of marijuana were also seized in different areas of the house and in defendant Howard's car.
Linda Howard, John Howard, and Carl Hill were indicted by the grand jury. Linda Howard withdrew her plea of not guilty, *717 and pled guilty prior to trial and testified for the remaining defendants.

ASSIGNMENT OF ERROR NO. 1
Defendants contend that the trial court erred when it denied their motion to suppress evidence seized during the search of the Howard residence. Defendants' attack is on two fronts: first, that the affiants intentionally omitted facts in the affidavit which would have precluded a finding of probable cause, and second, that the deputies exceeded the scope of the search under the warrant.
If an affiant intentionally omits relevant facts when swearing out an affidavit in an attempt to mislead the court, the warrant is quashed. State v. Lehnen, 403 So.2d 683 (La.1981). Defendants say that the affiants, Deputy Kuntz and her superior Captain Michael Barnett, intentionally omitted the amount of the marijuana which Deputy Kuntz saw in the Howard home (one ounce) and also did not include the time when the officers planned to execute the warrant (whenever Linda Howard returned with the suspected drugs).
Defendants maintain that the affiants left this information out because they felt that the magistrate would not have issued the warrant because of the Supreme Court's opinions in State v. Lewis, 385 So.2d 226 (La.1980) and State v. Boneventure, 374 So.2d 1238 (La.1979). In those cases, probable cause was not present because there was no reasonable belief that the marijuana mentioned in the affidavits would still be in the place to be searched. In both cases a "quantity" of marijuana was mentioned in the affidavit. In Boneventure, the entire "quantity" observed was "offered for consumption" and police waited two days to execute the warrant; in Lewis, the "quantity" of marijuana was seen by an informant as much as ten days before the warrant was executed. Here, the entirety of the marijuana seen by Ms. Kuntz was not offered for consumption; the deputies only waited seven to eight hours after the sighting to execute the warrant. Hence, the inclusion on the affidavit of the amount and their intention to delay the search would only have destroyed probable cause had the execution of the warrant been delayed longer; this delay was not long enough to do so, thus the warrant would be validated if we were to add the omitted facts and retest.
There was no evidence that the affiants omitted these facts intentionally to mislead the magistrate. The bare fact of their failure to include, absent other evidence, information which would have not immediately killed probable cause, evinces a neglect rather than an intentional fraud.
Next, defendants claim that the deputies exceeded the scope of the search authorized by the warrant. They claim that the warrant authorized a search only for the one ounce bag of marijuana seen by Deputy Kuntz; that the officers' used this warrant to gain entry into the Howard home to look for other drugs suspected to have been brought there by Linda Howard; that these other drugs were the true object of the search and since they were beyond the scope of the warrant, the search was general and exploratory in nature.
The Fourth Amendment of the United States Constitution, through the Fourteenth Amendment, and Article I, Section 5 of the Louisiana Constitution both require that no search warrant is to be issued without it particularly describing the place to be searched and the persons or things to be seized. The requirements are meant to keep authorized searches as limited as possible, to prevent "general, exploratory rummaging in a person's belongings." Coolidge v. New Hampshire, 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed. 564 (1971).
The warrant here authorized the deputies to search the Howard residence for a "quantity of controlled dangerous substance to wit: Marijuana." The marijuana spoken of in the first paragraph of the affidavit was the one ounce bag seen in Mark's bedroom dresser drawers; thus that bag was the authorized object of the search. The second paragraph of the affidavit *718 contains only allegations that the Howard residence had been a scene of distribution of "Quaaludes, Marijuana, and Cocaine."
The deputies, though they waited several hours to execute the warrant, still had probable cause to believe the ounce of marijuana was inside the house when they commenced the search shortly after Linda's arrival. The warrant authorized the police to search "the premises," which has been held to mean a garage, some outbuildings close to the main house, and even a tree nearby a house. State v. Michel, 422 So.2d 1115 (La.1982); State v. Hymer, 400 So.2d 637 (La.1981).
The plain view doctrine says that when in the course of a valid search the police came across some other article of incriminating character, they may seize it. Coolidge v. New Hampshire, supra. For the plain view doctrine to apply, however, the initial intrusion must be valid, the discovery must be inadvertent, and the contraband must be immediately recognizable as such. State v. Hernandez, 410 So.2d 1381 (La.1982). The initial intrusion here was supported by a warrant authorizing deputies to search the entire house, and not just Mark Taylor's bedroom, where the police had last seen the one ounce bag. The deputies were thus within their power in searching the master bedroom where the closed suitcases and the wrapped bale of marijuana were found. Having found these closed containers the deputies' opening of them was valid because they were empowered to search for the object "on the premises where the thing(s) may be found." (emphasis added)
Though it is undisputed that the officers suspected that the suitcases contained other drugs brought in by Linda, the search into the suitcases was still valid. For while the police's finding must also be "inadvertent" to fit under the plain view doctrine, we do not believe that the finding must be wholly unexpected.[2] Rather, the requirement of "inadvertency" means that police must not have probable cause to believe evidence not listed in the warrant will be found. See United States v. Hare, 589 F.2d 1291 (6th Cir.1979) and its discussion of the "inadvertency" requirement. We do not believe the Louisiana Supreme Court cases of State v. Fearn, 345 So.2d 468 (La.1977) or State v. Williams, 347 So.2d 231 (La.1977) preclude our interpretation of the inadvertency requirement. The court did not define "inadvertent" but merely held those searches and seizures to have not been so.
The police here strongly suspected that drugs were being brought in, but mere suspicion is not sufficient to establish probable cause and support a warrant. In the course of an intrusion wholly authorized by the legitimate purpose of looking for the one ounce bag of marijuana, the police's suspicion was confirmed by the actual observation of the cocaine, quaaludes and bale of marijuana contained within the suitcases and wrapped package.
The words of the court in United States v. Hare, supra, bear repeating:
"At first, it may seem illogical to hold that police who lawfully enter premises and discover evidence which is not described in their warrant, in the course of a properly limited search, may not seize it if they knew they would find it before entering, but may seize it if they only thought they might find it, or if they discover it unexpectedly. After all, the line between suspicion and probable cause is seldom very clear. It makes sense, however, if the fact is kept in mind that a warrant is normally required before a search can be conducted or a seizure effectuated, and if it is remembered that the only reason plain view seizures are permitted at all is because the intrusion which the Fourth Amendment seeks to guard against has already *719 lawfully occurred, and the police are faced with a situation in which they observe evidence which they could not have obtained permission to seize, and which now is likely to disappear or be destroyed if they stop and leave to obtain a new warrant. This is the "exigency" which underlies the plain view doctrine, and without this exigency the entire rationale falls. We note that the police cannot create their own exigency by simply failing to obtain a warrant until they are faced with the evidence." United States v. Hare, supra, at 1295.
This assignment therefore lacks merit.

ASSIGNMENT OF ERROR NO. 2
Defendants complain that the testimony elicited during the state's case-in-chief by the state from its witness, Deputy Kuntz, was prejudicial to defendants in that the question called for information concerning an extraneous offense and the only purpose in seeking the evidence was to attempt to prove knowledge and intent on the part of defendants. Further, defendants argue that the state's question was irrelevant and obviously called for hearsay and therefore should have been excluded.
The testimony complained of is as follows:
"Q. Did you ever receive any information concerning John Howard or Carl Hill involved in drugs?
A. Before the case, no.

* * * * * *
Q. Did you continue to develop information after the case?

* * * * * *
A. Yes."
La.R.S. 15:434 provides:
"Hearsay evidence is inadmissible, except as otherwise provided in this code."
Evidence is non-hearsay when offered nonassertively, i.e., to prove that the utterance occurred or that a conversation had taken place and not to prove the truth of the facts recited. See, State v. Naas, 409 So.2d 535 (La.1981) cert. denied, 457 U.S. 1119, 102 S.Ct. 2933, 73 L.Ed.2d 1332 (1982). At trial, the testimony complained of, although if expanded could have possible led to a statement which would have been hearsay, was limited by the trial judge when he allowed only a "yes" or "no" answer over defendants' objection. We note that, in brief, defendants do not argue that the question "obviously called for hearsay" and "clearly called for information concerning an extraneous offense." Since a "yes" or "no" answer is neither an out-of-court statement offered to prove the truth of the matter contained in it nor does it recite an extraneous offense attributable to defendants, such testimony was not hearsay nor was it other crimes evidence within the meaning of La.R.S. 15:445 and 446 and State v. Prieur, 277 So.2d 126 (La.1973); State v. Chaney, 423 So.2d 1092 (La.1982).
Moreover, although defendants had ample opportunity to elicit further information from the witness, Deputy Kuntz, on the point in question, defense counsel chose not to do so. Defendants' complaint that they were prejudiced by testimony that called for hearsay or evidence of an extraneous offense, is merely speculative as evidence of such hearsay and such extraneous offenses was in fact not presented. Moreover, it was within the trial judge's discretion to determine the relevancy of the testimony offered and that determination will not be overturned absent a showing of abuse of that discretion. La. R.S. 15:441; State v. Chaney supra. As the question addressed the material issue of possession of drugs, it was relevant to the crime charged. La.R.S. 15:435.
We cannot say that the trial judge abused his discretion in any way by allowing into evidence the testimony complained of.
Further, at trial, defense counsel objected to the testimony complained of on the grounds that it was hearsay and irrelevant. Only in their appeal brief do defendants raise the additional grounds that the testimony was immaterial and also *720 constituted evidence of extraneous offenses requiring a Prieur notice. Since it is well settled in Louisiana law that a new basis for an objection may not be raised for the first time on appeal, La.Code Crim.P. art. 841; State v. Burdgess, 434 So.2d 1062 (La.1983), this Court will not address these additional grounds raised by defendants.
We find no merit in this assignment of error.
For the above and foregoing reasons, we affirm the conviction and sentence of defendants.
AFFIRMED.
NOTES
[1] The basis for probable cause in the affidavit reads:

Affiants inform the Court that on this date, April 9, 1981, Deputy Mary Kuntz while working in an undercover capacity was present at the above location and along with one of the occupants, Mark Taylor, simulated smoking a Marijuana cigarette. Deputy Kuntz also observed other Marijuana present at the residence and was able to secure a sample. Said sample was identified by Deputy Kuntz and Captain Barnett as Marijuana.
Affiants further inform the Court that information has been received over the past six months from other reliable and confidential informants, as well as other police officers who had been inside the above residence, that 6408 Teah Drive, is being used as a place from which Quaaludes, Marijuana and Cocaine are distributed.
[2] It has been held by the federal Fifth Circuit Court of Appeals that the "inadvertent discovery" requirement of Coolidge does not apply to contraband; our Supreme Court has not so held. United States v. Thompson, 700 F.2d 944 (5th Cir.1983); State v. Fearn, 345 So.2d 468 (La.1977).