STATE OF CONNECTICUT *v.* DAISY HAMILTON
(6280)

SPALLONE, STOUGHTON and NORCOTT, Js.

Argued October 20, 1988—decision released January 24, 1989

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *John C. Smriga,* assistant state's attorney, for the appellant (state).

*Mark F. Gross,* for the appellee (defendant).

SPALLONE, J. The state appeals, pursuant to General Statutes § 54-96, from the decision of the trial court granting the defendant's motion to suppress evidence and from the subsequent dismissal of the charges against the defendant.

At the hearing on the motion to suppress, evidence establishing the following facts was presented. Police obtained four search warrants authorizing searches of (1) the defendant's residence, building 5, apartment 305, of the P. T. Barnum Apartments in the city of Bridgeport, (2) a tan and orange Ford van without license plates located at the P. T. Barnum Apartments, (3) the person of the defendant's son, Dayomas Hamilton, and (4) the person of the defendant, Daisy Hamilton. Items listed in the warrants were cocaine,

paraphernalia used in the cutting and packaging of cocaine, money and records pertaining to sales of cocaine, and firearms.

The police had applied for the warrants on the basis of information given to them by an informant that crack was being sold from the defendant's apartment and on the basis of their own observations of a subsequent "controlled buy" involving the defendant's son conducted with the participation of the informant. While conducting the controlled buy, Detective Richard DeReiso had observed the defendant's son escort the informant from the defendant's apartment to an unregistered Ford van located outside, which the defendant's son unlocked and entered. DeReiso observed the defendant's son exit the van and deliver the drugs to the informant.

On February 18, 1987, DeReiso and other police officers executed the warrants. Detective Thomas Russell was assigned to search the defendant's bedroom. In the course of searching the bedroom for narcotics, Russell came across a set of keys on a shelf. He did not seize the keys at that time. Shortly thereafter, when DeReiso entered the apartment and asked whether anyone had found keys to a Ford vehicle, Russell then took the keys and gave them to DeReiso. The keys, in fact, opened the Ford van described in the search warrant.

At the hearing on the motion to suppress, defense counsel argued that the keys should be suppressed because they had not been listed in the search warrant and, therefore, the seizure of the keys was illegal. The state argued that the keys were admissible under the plain view exception to the warrant requirement. The court granted the defendant's motion to suppress, holding that the seizure of the keys was not legal under the plain view exception because the keys had not been discovered inadvertently. Thereafter, because the state

represented that it had planned to show the defendant's complicity in the crime by proving that the keys to the van had been found in her apartment, the court agreed to dismiss the case with prejudice and granted the state permission to appeal.

The sole issue presented to us is whether the trial court erred in granting the defendant's motion to suppress the Ford van keys on the ground that the keys were seized in violation of the defendant's right under the fourth amendment to the United States constitution. The state argues that the seizure was reasonable under the plain view exception.

Generally, police executing a search warrant may seize only those items specified in the warrant. *State* v. *Pepe*, 176 Conn. 75, 79, 405 A.2d 51 (1978), citing *Marron* v. *United States*, 275 U.S. 192, 196, 48 S. Ct. 74, 72 L. Ed. 231 (1927). An exception to this general rule has been recognized, however, in certain circumstances. Where a police officer has a warrant to search a given area for specified objects, and in the course of the search comes across some other article of incriminating character, the property may be seized under the plain view exception. *State* v. *Pepe,* supra, 79. The plain view exception will thus validate a seizure of items not specified in a warrant where (1) the initial intrusion is lawful, (2) the discovery of the evidence is inadvertent, and (3) the seizing officers have reason to believe that the seized items are evidence of a crime. Id.; *State* v. *DiStefano,* 7 Conn. App. 726, 730, 510 A.2d 995 (1986).

In this case, the trial court found that the keys to the Ford van seized by the police during the search had not been discovered inadvertently within the meaning of the plain view exception and that the seizure was therefore not lawful under that exception.

On appeal, the function of this court is limited to determining whether the decision of the trial court is

clearly erroneous. Practice Book § 4061; *State* v. *Jones,* 193 Conn. 70, 79, 475 A.2d 1087 (1984). The evaluation of the credibility of witnesses testifying at a hearing on a motion to suppress is left to the sound discretion of the trial court. *State* v. *Jones,* supra, 80. This court cannot find facts or draw conclusions from primary facts found, but can only review such findings to determine whether they could legally, logically and reasonably be found. *State* v. *Davis,* 3 Conn. App. 359, 364, 488 A.2d 837 (1985).

For a discovery to be inadvertent within the meaning of the plain view exception, police must not have anticipated the discovery or have known in advance the location of the evidence. *Texas* v. *Brown,* 460 U.S. 730, 739, 103 S. Ct. 1535, 75 L. Ed. 2d 502 (1983); *Coolidge* v. *New Hampshire,* 403 U.S. 443, 470–71, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971). A discovery is inadvertent if it occurs "without premeditation or prior intention." *United States* v. *$10,000 in U.S. Currency,* 780 F.2d 213 (2d Cir. 1986).

Our review of the testimony presented in this case reveals ample evidence to support the trial court's finding that the discovery of the van keys was not "inadvertent" within the meaning of the plain view exception to the warrant requirement. DeReiso's testimony indicated that he had reason to believe, prior to the procurement of the warrants, that the van was ordinarily locked[1] and that the keys were kept in the defendant's apartment.[2] There was also evidence from which the

---

[1] In describing what he observed when the defendant's son and the informant were at the Ford van under his surveillance, DeReiso testified: "They went to a van that's parked right outside. The son went to the door. *I believe it was locked* because he was at the door for a little while. Then he opened the door." (Emphasis added.)

[2] DeReiso testified on cross-examination by defendant's counsel:

"Q. [Y]ou had some reasonable assumption that the keys were in the apartment because your investigation indicated the son of the defendant had the key. Correct?

"A. Yes."

trial court could conclude that DeReiso had entered the defendant's apartment with the specific purpose of locating the keys.[3] On the basis of DeReiso's testimony,

[3] DeReiso testified on cross-examination by defendant's counsel:

"Q. Now let's go to the search at Daisy Hamilton's apartment. . . . You walked in—were you the first person in, that you remember?

"A. I don't remember.

"Q. You were the first person to talk to Daisy Hamilton. Weren't you?

"A. Probably.

"Q. And you said to Daisy Hamilton, if the keys to a van parked outside were in the apartment, didn't you?

"A. I probably asked her if they were there, yes.

"Q. That's what I'm saying. If the keys to a van—I'm quoting from the discovery—if the keys to a van parked outside were in the apartment. Right?

"A. Okay.

"Q. And her answer was, I don't know who the van belongs to, nor do I know where the keys are.

"A. That I can recall, yes.

"Q. Now that was done seven days more or less after you saw the controlled buy on February 11th?

"A. The 6th.

"Q. Ultimately, you called out to the men in the apartment has anybody found keys to a Ford van. Didn't you?

"A. I doubt if I yelled out, but I probably did talk to the guys and asked them. I asked if anybody had located keys to a Ford van. Yes.

"Q. As these men were searching, did you ask, have any of you found Ford keys?

"A. Yes.

"Q. So it's a fair statement that when you went into the apartment, you were looking for the keys to the Ford van. Correct?

"A. Later on, yes. When she didn't give up any keys, yes.

"Q. When you went into the apartment—

"A. Yes.

"Q. —you had some reasonable assumption that the keys were in the apartment because your investigation indicated the son of the defendant had the key. Correct?

"A. Yes.

"Q. And there was a search warrant for the orange Ford van. Correct?

"A. Yes.

"Q. And when you went in, you did immediately ask Mrs. Hamilton if she had the keys to the Ford van. Correct?

"A. Probably not immediately, but in our first conversation, yes.

"Q. And then after the search went underway, you then alerted by asking the men, have any of you found Ford van keys. Correct?

"A. Yes.

the trial court could reasonably conclude that the keys were not inadvertently discovered in the course of the search of the defendant's apartment within the meaning of the plain view exception and that seizure of the keys was therefore not justified by that exception.

There is no error.

In this opinion the other judges concurred.

"Q. So that they were then directed to go looking specifically for Ford van keys. Correct?

"A. I asked them if they had found any.

"Q. And that was if you found any, and if not, you will look to see if there were. Correct?

"A. If they came across them while they were searching, yes."