STATE OF CONNECTICUT *v.* DAISY HAMILTON
(13696)

PETERS, C. J., HEALEY, SHEA, GLASS and HULL, Js.

Argued January 3—decision released April 24, 1990

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *John Smriga,* assistant state's attorney, for the appellant (state).

*Mark F. Gross,* for the appellee (defendant).

ARTHUR H. HEALEY, J. The dispositive issue in this appeal is whether the Appellate Court erred in concluding that the discovery of certain keys used to unlock a van where drugs were stored was not inadvertent and thus did not qualify under the plain view doctrine as an exception to the warrant requirement.[1] The

---

[1] This court also certified a second issue which was presented as follows: "When in the course of a search pursuant to a warrant the police discover keys that may be used to unlock a van that is also authorized to be searched under the warrant, may the keys be seized for that purpose?" Because the

Appellate Court in *State* v. *Hamilton,* 17 Conn. App. 385, 552 A.2d 834 (1989), held that, on the basis of the testimony given during the pretrial hearing on the defendant's motion to suppress the van keys seized by the police in a search of her apartment, the trial court could have reasonably concluded that Detective Richard DeRiso had reason to believe, prior to the procurement of the four search warrants involved, that the van was ordinarily locked, that the keys were kept in the defendant's apartment, and that DeRiso entered the defendant's apartment with the specific purpose of locating the keys and thus the discovery of such keys was not inadvertent to come within the plain view doctrine. We granted the state's petition for certification to appeal from the Appellate Court; *State* v. *Hamilton,* 211 Conn. 804, 559 A.2d 1138 (1989); and conclude that the Appellate Court did not err in finding that the discovery of the keys was not inadvertent under the plain view doctrine.

Although the Appellate Court has set out sufficient facts, we need to present those facts relevant to the proper disposition of the issue presented. On February 17, 1987, Detectives DeRiso and Miguel Cardozo of the Bridgeport police department obtained four search warrants authorizing the search of (1) the defendant's residence, building 5, apartment 305, of the P. T. Barnum Apartments in the city of Bridgeport; (2) a tan and orange van without license plates located at the P. T. Barnum Apartments; (3) the person of the defendant's son, Dayomas Hamilton; and (4) the person of the defendant, Daisy Hamilton. The warrant listed the items to be seized as including, inter alia, "[c]ocaine, any paraphernalia used in cutting and pack-

gravamen of the defendant's motion to suppress was not the use of the keys to open the van but the introduction into evidence of proof that the keys that fit the lock on the van were found in the defendant's possession, we do not address this issue.

aging of cocaine such as scales, grinders, strainers, measuring spoons, plastic baggies, glassine bags, pyramid papers, plastic vials, lactose, any monies and or records pertaining to the sales of cocaine and any firearms used for the personal protection of drug traffickers."

DeRiso and Cardozo had applied for the warrants on the basis of information given to them by an informant that crack was being sold from the defendant's apartment and on the basis of their own observation on February 11, 1987, of a subsequent "controlled buy" involving the defendant's son, Dayomas, conducted with the participation of an informant. While conducting the "controlled buy," DeRiso and Cardozo had observed Dayomas escort the informant from the defendant's apartment to an unregistered tan and orange Ford van located outside the apartment, which Dayomas "unlocked and entered." The two officers observed Dayomas exit the van and deliver the drugs to the informant.

On February 18, 1987, DeRiso and other police officers executed the warrants. Prior to executing the warrants, however, DeRiso or Cardozo held a "briefing meeting." At that meeting, the officers were briefed about the "controlled buy" from the Ford van and told to search for narcotics. At the same time, several officers were assigned to guard the Ford van, and Detective Thomas Russell was assigned to search the defendant's bedroom. Shortly after DeRiso, who was in charge of the search party, and the other officers entered the defendant's apartment, he asked the defendant "if the keys to a van parked outside were in the apartment." The defendant stated, "I don't know who that van belongs to nor do I know where the keys are."

In the course of searching the defendant's bedroom for narcotics, Russell came across a set of keys on a shelf. He did not seize the keys at that time. Russell testified at the hearing on the motion to suppress that as he looked at these keys, they meant nothing to him "whatsoever." While Russell was still searching in the bedroom, DeRiso asked the officers whether anyone found keys to a Ford van. It was only then that Russell attached significance to the keys. Russell then took the keys off the shelf and gave them to DeRiso. DeRiso took the keys and opened the Ford van described in the warrant. In the defendant's apartment and in the Ford van, the officers found incriminating evidence including several vials of cocaine.[2] The defendant was subsequently charged by information with two counts of unlawful possession of a narcotic substance with intent to sell in violation of General Statutes § 21a-278 (b) and one count of possession of drug paraphernalia in a drug factory situation in violation of General Statutes § 21a-277 (c).

At the hearing on the motion to suppress, defense counsel argued, inter alia, that the keys should be suppressed because they had not been listed in the search warrant and, therefore, the seizure of the keys was illegal. The state argued that the keys were admissible under the plain view exception to the warrant requirement. The court orally granted the defendant's motion to suppress, holding that the seizure of the keys was not legal under the plain view exception because the keys had not been discovered inadvertently. In doing so, the trial court noted that keys are not "of themselves" contraband and are not normally tools of

[2] The officers reported on February 18, 1987, on their inventory sheet that they found only "one plastic baggie containing vials with caps, one hand held scale, one larger plastic baggie containing smaller plastic zip lock baggies." Keys were not mentioned in the inventory. It was not until after the first day of the suppression hearing that the state made a full disclosure of the exact items seized which included the set of van keys.

crimes. From this judgment the state appealed to the Appellate Court, pursuant to General Statutes § 54-96.

The Appellate Court held that the trial court could reasonably have concluded that the keys were not inadvertently discovered in the course of the search of the defendant's apartment within the meaning of the plain view exception and that the seizure of the keys was therefore not justified by that exception. *State* v. *Hamilton,* supra, 17 Conn. App. 391. The court stated that "[f]or a discovery to be inadvertent within the meaning of the plain view exception, police must not have anticipated the discovery or have known in advance the location of the evidence. . . . A discovery is inadvertent if it occurs 'without premeditation or prior intention.' " Id., 389. We agree.

The fourth amendment to the United States constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." This amendment prohibits general and exploratory searches. Both state and federal courts are required to exclude evidence obtained by means of searches found violative of the fourth amendment. *Weeks* v. *United States,* 232 U.S. 383, 34 S. Ct. 341, 58 L. Ed. 652 (1914), made applicable to states in *Mapp* v. *Ohio,* 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961); see *State* v. *DelVecchio,* 149 Conn. 567, 572–73, 576, 182 A.2d 402 (1962).

It has been said that "searches conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz* v. *United*

States, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967); *State* v. *Zindros,* 189 Conn. 228, 236–37, 456 A.2d 288 (1983), cert. denied, 465 U.S. 1012, 104 S. Ct. 1014, 79 L. Ed. 2d 244 (1984). In *Coolidge* v. *New Hampshire,* 403 U.S. 443, 464–73, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971), a plurality of the United States Supreme Court created an exception to the warrant requirement of the fourth amendment known as the "plain view" doctrine. This doctrine "is based upon the premise that the police need not ignore incriminating evidence in plain view while they are operating within the parameters of a valid search warrant or are otherwise entitled to be in a position to view the items seized." *State* v. *Ruth,* 181 Conn. 187, 193, 435 A.2d 3 (1980). A plain view seizure is reasonable under the fourth amendment if the police: (1) were lawfully on the premises and engaged in a lawful activity; (2) discovered the evidence inadvertently; and (3) have probable cause to believe there is a reasonable relationship between the evidence seized and the criminal behavior under investigation. *Texas* v. *Brown,* 460 U.S. 730, 741–43, 103 S. Ct. 1535, 75 L. Ed. 2d 502 (1983); *Coolidge* v. *New Hampshire,* supra, 466; *State* v. *Reddick,* 207 Conn. 323, 335, 541 A.2d 1209 (1988); *State* v. *Magnano,* 204 Conn. 259, 271, 528 A.2d 760 (1987); *State* v. *Altrui,* 188 Conn. 161, 179, 448 A.2d 837 (1982); *State* v. *Graham,* 186 Conn. 437, 443–44, 441 A.2d 857 (1982); *State* v. *Federici,* 179 Conn. 46, 56, 425 A.2d 916 (1979); *State* v. *Onofrio,* 179 Conn. 23, 39–40, 425 A.2d 560 (1979); *State* v. *Pepe,* 176 Conn. 75, 79–80, 405 A.2d 51 (1978); *State* v. *Krause,* 163 Conn. 76, 82–83, 301 A.2d 234 (1972); 2 W. LaFave, Search and Seizure § 4.11 (a). In this case, in view of the certified question, we only address the inadvertence limitation of the plain view doctrine.

The plurality in *Coolidge* v. *New Hampshire,* supra, 469–71, in setting out the inadvertence limitation,

stated: "The rationale of the exception to the warrant requirement . . . is that a plain-view seizure will not turn an initially valid (and therefore limited) search into a 'general' one, while the inconvenience of procuring a warrant to cover an inadvertent discovery is great. But where the discovery is anticipated, where the police know in advance the location of the evidence and intend to seize it, the situation is altogether different. The requirement of a warrant to seize imposes no inconvenience whatever, or at least none which is constitutionally cognizable in a legal system that regards warrantless searches as *per se* unreasonable' in the absence of 'exigent circumstances.' "

The state contends, however, that there is no inadvertency requirement under the plain view doctrine. It asserts that twelve years after *Coolidge* was decided, the United States Supreme Court in *Texas* v. *Brown,* supra, was divided as to whether inadvertency was a requirement.

In *State* v. *Ruscoe,* 212 Conn. 223, 237 n.8, 563 A.2d 267 (1989), cert. denied,      U.S.      , 110 S. Ct. 1144, 107 L. Ed. 2d 1049 (1990), we noted "the uncertain status of the 'inadvertence' aspect of the plain view doctrine." In *Ruscoe,* we recognized that "[t]his 'requirement' of the plain view doctrine has never been accepted by a judgment supported by a majority of the United States Supreme Court." Id.; see *Arizona* v. *Hicks,* 480 U.S. 321, 330, 107 S. Ct. 1149, 94 L. Ed. 2d 347 (1987) (White, J., concurring) (requirement of inadvertency never accepted by a majority of the court), (O'Connor, J., with Rehnquist, C. J., and Powell, J., dissenting) (though inadvertency requirements of *Coolidge* never expressly adopted by the majority of the court, *Coolidge* plurality decision should be point of reference for further discussion of the issue); *Texas* v. *Brown,* supra, 743 (plurality opinion) ("[w]hatever may be the final disposition of the 'inadvertence' ele-

ment of 'plain view,' it clearly was no bar to the seizure here"), (White, J., concurring) (no inadvertency requirement), (Powell, J., with Blackmun, J., concurring) (no reason to criticize *Coolidge* because generally accepted for more than a decade); *Washington* v. *Chrisman,* 455 U.S. 1, 5–6, 102 S. Ct. 812, 70 L. Ed. 2d 778 (1982) (omitted as a separate requirement); *Coolidge* v. *New Hampshire,* supra (plurality opinion) (inadvertency requirement endorsed), (Black, J., with Blackmun, J., dissenting) (no inadvertency required for plain view), 517 (White, J., with Burger, C. J., dissenting) (criticizing inadvertency requirement as "punitive and extravagant application of the exclusionary rule").

Although a majority of the United States Supreme Court has not adopted the inadvertence aspect, most lower courts have adopted it as an essential element of the plain view doctrine. See *Wolfenbarger* v. *Williams,* 826 F.2d 930 (10th Cir. 1987); *Perlman* v. *Chicago,* 801 F.2d 262, 266 (7th Cir. 1986), cert. denied, 480 U.S. 906, 107 S. Ct. 1349, 94 L. Ed. 2d 520 (1987); *United States* v. *Newton,* 788 F.2d 1392, 1394–95 (8th Cir. 1986), cert. denied, 488 U.S. 1031, 109 S. Ct. 841, 102 L. Ed. 2d 973 (1989); *United States* v. *Fawole,* 785 F.2d 1141, 1146–47 (4th Cir. 1986); see *United States* v. *$10,000 in United States Currency,* 780 F.2d 213, 218 (2d Cir. 1986); *United States* v. *Liberti,* 616 F.2d 34, 36 (2d Cir.), cert. denied, 446 U.S. 952, 100 S. Ct. 2918, 64 L. Ed. 2d 808 (1980); *United States* v. *Hare,* 589 F.2d 1291, 1294 (6th Cir. 1979); *United States* v. *Worthington,* 544 F.2d 1275, 1280 (5th Cir.), cert. denied, 434 U.S. 817, 98 S. Ct. 55, 54 L. Ed. 2d 72 (1977); *Commonwealth* v. *Cefalo,* 381 Mass. 319, 409 N.E.2d 719 (1980); *State* v. *Clark,* 592 S.W.2d 709 (Mo. 1979), cert. denied, 449 U.S. 847, 101 S. Ct. 132, 66 L. Ed. 2d 57 (1980); *State* v. *Richards,* 294 N.C. 474, 242 S.E.2d 844 (1978); *Commonwealth* v. *Millard,* 273 Pa. Super. 523, 417 A.2d 1171 (1979); see also 2 W. LaFave, supra,

§ 4.11 (d), p. 350 and cases cited therein; W. Ringel, Searches and Seizures, Arrests and Confessions § 6.5 (a) (2) and cases cited therein; but see *North* v. *Superior Court,* 104 Cal. Rptr. 833, 502 P.2d 1305 (1972); *State* v. *Pontier,* 95 Idaho 707, 518 P.2d 969 (1974); *State* v. *King,* 191 N.W.2d 650 (Iowa 1971), cert. denied, 406 U.S. 908, 92 S. Ct. 1617, 31 L. Ed. 2d 819 (1972); *State* v. *Romero,* 660 P.2d 715 (Utah 1983).

This court has adopted the inadvertence limitation and has consistently applied it as an element of the plain view doctrine. See *State* v. *Reddick,* supra; *State* v. *Altrui,* supra; *State* v. *Graham,* supra; *State* v. *Federici,* supra; *State* v. *Pepe,* supra; *State* v. *Watson,* 165 Conn. 577, 587, 345 A.2d 532 (1973); *State* v. *Krause,* supra. In *State* v. *Couture,* 194 Conn. 530, 547, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985), we held, however, that "inadvertence is not required if the items seized fall under the category of contraband, stolen property or objects dangerous in themselves." See *State* v. *Ruscoe,* supra, 238 (contraband involved). In *Coolidge* v. *New Hampshire,* supra, 472, Justice Stewart, writing for the plurality, carefully pointed out that *Coolidge* did not involve contraband, stolen goods or objects dangerous in themselves. He stated that "to extend the scope of such an intrusion to the seizure of objects—not contraband nor stolen nor dangerous in themselves—which the police know in advance they will find in plain view and intend to seize, would fly in the face of the basic rule that no amount of probable cause can justify a warrantless seizure." Id., 471.[3] A number of lower courts

---

[3] In Justice White's dissent and concurrence in *Coolidge* v. *New Hampshire,* 403 U.S. 443, 519, 91 S. Ct. 2022, 29 L. Ed. 2d 564, reh. denied, 484 U.S. 874, 92 S. Ct. 26, 30 L. Ed. 2d 120 (1971), he stated: "Apparently, contraband, stolen, or dangerous materials may be seized when discovered in the course of an otherwise authorized search even if the discovery is fully anticipated and a warrant could have been obtained." Moreover, Justice

have also interpreted *Coolidge* to have held the inadvertence limitation inapplicable to contraband, stolen goods and objects dangerous in themselves. See *United States* v. *Johnson,* 707 F.2d 317, 321 (8th Cir. 1983); *United States* v. *Vargas,* 621 F.2d 55, 56 (2d Cir.), cert. denied, 449 U.S. 854, 101 S. Ct. 150, 66 L. Ed. 2d 68 (1980); see also *United States* v. *Freeman,* 685 F.2d 942, 954 n.7 (5th Cir. 1982), and cases cited therein; 2 W. LaFave, supra.

This case does not involve the seizure of contraband, stolen goods, or objects dangerous in themselves. The item that was allegedly unconstitutionally seized was a set of keys. Therefore, on the basis of this court's adoption and application of the plain view doctrine, the inadvertent discovery limitation of the plain view doctrine is applicable to the seizure in this case.

It has been noted that "[t]he most serious problem with the plurality's approach [in *Coolidge*] to plain view is that Justice Stewart nowhere defined the degree of expectation required to make a discovery by the police inadvertent." H. Kalven, "The Supreme Court, 1970 Term," 85 Harv. L. Rev. 3, 244 (1971). The court in *Coolidge* simply stated "where the discovery is anticipated, where the police know in advance the location of the evidence and intend to seize it," the plain view doctrine does not apply. *Coolidge* v. *New Hampshire,* supra, 470. In *State* v. *Pepe,* supra, 79–80, this court stated: "The police need not be caught completely by surprise for a discovery to be inadvertent, so long as they did not anticipate the discovery or know in advance the location of the evidence and intend to seize it."[4]

Black, who also dissented on this point, apparently construed the plurality opinion in the same manner. Id., 507 n.4; see also *United States* v. *Liberti,* 616 F.2d 34, 36 (2d Cir.), cert. denied, 446 U.S. 952, 100 S. Ct. 2918, 64 L. Ed. 2d 808 (1980).

[4] *State* v. *Pepe,* 176 Conn. 75, 80, 405 A.2d 51 (1978), involved stolen goods. After our decision in *Pepe,* we held that "inadvertence is not required if

If the police were completely surprised by their discovery of the evidence seized in plain view, there is no question that the discovery is inadvertent. The question of whether a discovery is inadvertent arises, however, where the police anticipated finding the evidence and had reason to believe the evidence would be found but failed particularly to describe that item in the search warrant.

In *United States* v. *Hare,* supra, 1294, the Sixth Circuit Court of Appeals provides an analysis of the inadvertence limitation of the plain view doctrine that we find persuasive. In *Hare,* the court interpreted "inadvertence" in the context of the plain view doctrine to mean "that the police must be without probable cause to believe evidence would be discovered until they actually observe it in the course of an otherwise justified search." The court reasoned that "[t]here are many times when a police officer may 'expect' to find evidence in a particular place, and that expectation may range from a weak hunch to a strong suspicion. However, the Fourth Amendment prohibits either a warrant to issue or a search based on such an expectation. Yet if in the course of an intrusion wholly authorized by another legitimate purpose, that hunch or suspicion is confirmed by an actual observation, the police are in precisely the same position as if they were taken wholly by surprise by the discovery. The same exigent circumstances exist, and no warrant could have been obtained before the discovery." Id.

The court further stated: "At first, it may seem illogical to hold that police who lawfully enter premises and

the items seized fall under the category of contraband, stolen property or objects dangerous in themselves." *State* v. *Couture,* 194 Conn. 530, 547, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985); see *State* v. *Ruscoe,* 212 Conn. 223, 237 n.8, 563 A.2d 267 (1989), cert. denied,   U.S.   , 110 S. Ct. 1144, 107 L. Ed. 2d 1049 (1990).

discover evidence which is not described in their warrant, in the course of a properly limited search, may not seize it if they *knew* they would find it before entering, but may seize it if they only thought they might find it, or if they discover it unexpectedly. After all, the line between suspicion and probable cause is seldom very clear. It makes sense, however, if the fact is kept in mind that a warrant is normally required before a search can be conducted or a seizure effectuated, and if it is remembered that the only reason plain view seizures are permitted at all is because the intrusion which the Fourth Amendment seeks to guard against has already lawfully occurred, and the police are faced with a situation in which they observe evidence which they could not have obtained permission to seize, and which now is likely to disappear or be destroyed if they stop and leave to obtain a new warrant. This is the 'exigency' which underlies the plain view doctrine, and without this exigency the entire rationale falls. We note that the police cannot create their own exigency by simply failing to obtain a warrant until they are faced with the evidence." Id., 1295.[5]

---

[5] For other jurisdictions adopting the analysis of "inadvertence" in *United States* v. *Hare,* 589 F.2d 1291 (6th Cir. 1979), see, e.g., *People* v. *Stoppel,* 637 P.2d 384 (Colo. 1981) (adopting the "reasoned and thorough evaluation of inadvertence"); see *State* v. *Howard,* 448 So. 2d 713, 718 (La. App. 1984); *People* v. *Myshock,* 116 Mich. App. 72, 321 N.W.2d 849 (1982) *State* v. *Clark,* 592 S.W.2d 709 (Mo. 1980), cert. denied, 449 U.S. 847, 101 S. Ct. 132, 66 L. Ed. 2d 57 (1980); *State* v. *White,* 322 N.C. 770, 370 S.E.2d 390, cert. denied, 488 U.S. 958, 109 S. Ct. 399, 102 L. Ed. 2d 387 (1988);

One commentator has noted that while courts and commentators have not agreed on the scope of the "inadvertence" element of the plain view doctrine, "the better position seems to be that a discovery is inadvertent even if the police suspected they would find an item, unless they had probable cause to obtain a warrant to search for it. See, e.g. . . . *United States* v. *Hare,* [supra,] 1294 . . . . " L. Bloom, "The Law Office Search: An Emerging Problem and Some Suggested Solutions," 69 Georgetown L.J. 1, 85–86 n.439 (1980).

The Appellate Court, in stating that "[a] discovery is inadvertent if it occurs 'without premeditation or prior intention,' " quoted *United States* v. *$10,000 in United States Currency,* supra, in which the Second Circuit Court of Appeals broadly interpreted the inadvertence limitation. *State* v. *Hamilton,* supra, 17 Conn. App. 389. In that case, the court stated that the "focus of the [suppression] hearing is better directed toward the good faith of the police action when fully reviewed" instead of focusing on whether the police had probable cause to know the evidence would be discovered. *United States* v. *$10,000 in United States Currency,* supra, 219. The court stated that "where the proof indicates that the police have conducted a thorough investigation of the crime and the means available to prove it and the search is conducted in a manner reasonable in duration and intensity, the property seized may be found to be inadvertently discovered in plain view." Id.

The court, in rejecting a probable cause analysis, stated: "Nor is the existence of probable cause, unrecognized by the police, sufficient to bar discovery as not inadvertent. Such a purely 'objective' approach would exclude important evidence simply because the police 'by oversight or acting from an abundance of caution or out of a misapprehension of what it takes to obtain a search warrant covering that evidence, failed to include that item in the warrant executed.' 2 W. LaFave, [supra,] § 4.11 at 181." Id., 218. We do not find persuasive the Second Circuit Court of Appeals' interpretation of the inadvertence aspect of the plain view doctrine.

The Second Circuit's interpretation of "inadvertence" permits a warrantless seizure of an item even though the police know the location of the item and intend to seize it, so long as the police acted in good faith in executing the warrant. We believe that this interpretation is contrary to what the plurality intended the inadvertence limitation to mean. In *Coolidge,* the

plurality stated: "If the initial intrusion is bottomed upon a warrant that fails to mention a particular object, *though the police know its location and intend to seize it,* then there is a violation of the express constitutional requirement of 'Warrants . . . particularly describing . . . [the] things to be seized.' . . . [T]o extend the scope of such an intrusion to the seizure of objects . . . which the police know in advance they will find in plain view and intend to seize, would fly in the face of the basic rule that no amount of probable cause can justify a warrantless seizure." *Coolidge* v. *New Hampshire,* supra, 471. It is apparent that *Coolidge* does not support a good faith standard but rather it was intended to prevent a plain view seizure when the police knew in advance the location of an item and intended to seize it. See H. Wallin, "The Uncertain Scope of the Plain View Doctrine," 16 U. Balt. L. Rev. 266, 278 (1987). The court in *$10,000 in United States Currency* permits, however, such a seizure so long as the seizing officer acted in good faith in executing the warrant. The court stated that, "even if the police in good faith failed to mention an item in the warrant, the manner in which the search was actually conducted can render discovery no longer inadvertent." *United States* v. *$10,000 in United States Currency,* supra, 219.

While it is true that the court in *Coolidge* v. *New Hampshire,* supra, 470, was concerned with turning "an initially valid (and therefore limited) search into a 'general one,' " that concern was based on the fourth amendment requirement that "warrants shall . . . particularly [describe] the place to be searched, and the persons or things to be seized." U.S. Const., amend. IV. "The [particularity requirement of the fourth amendment] was a direct response to the evil of the general warrant, one of the abuses by the Crown that led to the American revolution: '[T]he problem [posed by the general warrant] is not that of intrusion *per se,*

but of a general exploratory rummaging in a person's belongings . . . . [The fourth amendment addressed the problem] by requiring a "particular description" of the things to be seized.' *Andresen* v. *Maryland,* 427 U.S. 463, 480, 96 S. Ct. 2737, 2748, 49 L. Ed. 2d 627 (1976) (quoting *Coolidge* v. *New Hampshire,* [supra, 467])." *United States* v. *Shoffner,* 826 F.2d 619, 630 (7th Cir. 1987). If the police know in advance that the evidence will be discovered and they intend to seize it, failure to include that evidence in the search warrant violates the particularity requirement of the fourth amendment regardless of any claimed good faith of the officer.[6] For this reason, we disagree with the good faith rationale in *United States* v. *$10,000 in United States Currency,* supra.

The court, in *United States* v. *Hare,* supra, 1294, stated that *Coolidge* meant "only to condemn warrantless seizures when a warrant could have been obtained—in other words, when the exigency which normally accompanies a plain view seizure is not present." In *Coolidge,* the court stated: "Since the police knew of the presence of the automobile and planned all along to seize it, there was no 'exigent circumstance' to justify their

---

[6] One commentator has noted that "[c]ourts relying on a good faith criterion must examine the subjective intent of [the] intruding officers. This determination entails inquiry into whether the failure to list the evidence was deliberate or accidental, whether the invasion was undertaken with the expectation that these objects would be seized, and whether all the officers were operating under the same misapprehension. A more practical guide for determining whether seizures are inadvertent is the familiar and workable probable cause standard." H. Wallin, "The Uncertain Scope of the Plain View Doctrine," 16 U. Balt. L. Rev. 266, 278 (1987). Moreover, we have stated that the test to determine probable cause is objective and does not require a determination of the subjective intent of the police. See *Cosgrove Development Co.* v. *Cafferty,* 179 Conn. 670, 671, 427 A.2d 841 (1980); *State* v. *DeChamplain,* 179 Conn. 522, 528, 427 A.2d 1338 (1980). Therefore, a court can determine whether there is probable cause to invalidate a seizure under the plain view doctrine by looking at the facts and circumstances of the crime.

failure to obtain a warrant." *Coolidge* v. *New Hampshire,* supra, 472. An exigency occurs when "the police are faced with a situation in which they observe evidence *which they could not have obtained permission to seize,* and which now is likely to disappear or be destroyed if they stop and leave to obtain a new warrant. . . . We note that the police cannot create their own exigency by simply failing to obtain a warrant until they are faced with the evidence." *United States* v. *Hare,* supra, 1295.

We interpret the inadvertence limitation of the plain view doctrine to mean that the police must be without probable cause to believe evidence would be discovered until they actually observe it in the course of an otherwise justified search. Id., 1294.[7]

We next apply this interpretation and analysis of the inadvertence limitation of the plain view doctrine to the facts of this case. In determining whether the

[7] It has been noted that "the greatest effect of the inadvertence rule will be the creation of troublesome practical problems of proof at suppression hearings. Since the burden is traditionally on those seeking exemption from the warrant requirement to show the need for it, the plurality's rule [in *Coolidge* v. *New Hampshire*] will foster an anomalous situation in which police contend they did not have probable cause to seize the object before they made their entry, while the defendant contends probable cause existed and the police could have obtained a warrant. Such a scenario would hardly encourage police truthfulness." H. Kalven, "The Supreme Court, 1970 Term," 85 Harv. L. Rev. 3, 245 (1971); see also 2 W. LaFave, Search and Seizure § 4.11 (d). Whether we interpret the inadvertence limitation of the plain view doctrine as requiring the invalidation of discoveries when the police either have probable cause or have an expectation that the evidence will be discovered presents the same difficulties in the burden of proof. This doctrinal difficulty is inherent in the inadvertence limitation of the plain view doctrine. This difficulty does not, however, outweigh the protection the fourth amendment provides against planned warrantless seizures. As one scholar noted: "Probable cause is necessary in the inadvertence requirement to prevent the police from conducting a planned warrantless seizure on plain view and manipulating the warrant requirement to defeat the Fourth Amendment." J. Hall, Search and Seizure § 3:13.

Appellate Court erred in concluding that the trial court could reasonably have found that the discovery of the keys was not inadvertent, we must review the evidence presented to the Appellate Court regarding the information available to the officers concerning the crime and the circumstances leading to the issuance of the search warrants. We note that the Appellate Court, in reviewing the action of the trial court, recognized that, because the requirement of obtaining a warrant is the rule, exceptions to which are few and zealously guarded, anyone, such as the state, claiming an exemption from that rule bears the burden of proving the need for it. *State* v. *Zindros,* 189 Conn. 228, 456 A.2d 288 (1983).

In paragraph three of the affidavit in support of the search warrant, DeRiso and Cardozo presented the following information: "Affiants let the informant out of the unmarked police vehicle, keeping him in view at all time and watched him enter the doorway of building #5 which leads to apartment #305 of the P. T. Barnum Apartments. After a few minutes the below signed affiants observed the informant exit the same doorway and return to the same area that he was let out at. The informant told the below signed affiants that when he went to Apt. #305 he spoke to a Black female he knows as Daisy. After asking her if she had Crack she took $10.00 from him and asked him to wait. After a few minutes Dayomas, known to him as Daisy's son, told the informant to come with him. They both exited the apartment and on the way down the stairs the informant asked Dayomas where are we going and Dayomas replied that they were keeping the Crack downstairs in the Van. Informant stated that Dayomas opened the driver's side of a tan and orange, Ford Van and take out one vial and hand it to the informant. Affiants also observed the informant and the young black male go to the tan and orange Ford van which was parked just

outside the door, affiants were unable to [see the] registration at this time due to van being backed-up against the wall. Informant turned over to Detective DeRiso a small vial containing a hard off white substance which he had just purchased in the above transaction. Informant was once again searched to make sure he was not carrying any other narcotics or contraband." In addition, in paragraph six of the affidavit, they stated that the informant had "told Detective DeRiso that the orange and tan van [where] he purchased the Crack was unregistered because it had no plate on it."

On the basis of this information and information provided in several additional paragraphs in the affidavit, the issuing judge found that the officers had established probable cause to search the defendant's apartment, the tan and orange van outside the defendant's apartment, the defendant's person, and her son's person. The issuing judge gave the officers permission to search for "Cocaine, any paraphernalia used in cutting and packaging of cocaine such as scales, grinders, strainers, measuring spoons, plastic baggies, glassine bags, pyramid papers, plastic vials, lactose, any monies and or records pertaining to the sales of cocaine and any firearms used for the personal protection of drug traffickers."

The trial court could reasonably have found, as the Appellate Court concluded, that the officers had sufficient information to believe that the keys to the van would be found in the defendant's apartment to warrant a finding that the discovery of the keys was not inadvertent and that a warrant should have been obtained. In particular, we point out that the informant told the officers that the defendant's son had told him that they kept the crack downstairs in the van outside the defendant's apartment. It is reasonable for the officers to have known, on the basis of their training, experi-

ence, and knowledge of the crime of possession of narcotics, that the owner of the crack or drugs in the van would have taken necessary precautions to protect the drugs from being stolen. At a minimum, the owner would have locked the doors to the van. As the Appellate Court pointed out, "[DeRiso's] testimony indicated that he had reason to believe, prior to the procurement of the warrants, that the van was ordinarily locked and that the keys were kept in the defendant's apartment." *State* v. *Hamilton,* supra, 17 Conn. App. 389. At the suppression hearing, DeRiso, in describing his observations when Dayomas and the informant went to the van, testified: " 'The son went to door [of the van]. *I believe it was locked* because he was at the door for a little while. Then he opened the door.' (Emphasis added.)" Id., 389 n.1. In addition, as indicated in the affidavit, the officers knew the van was unregistered; therefore, in order to establish a nexus between the van that contained the drugs outside the defendant's apartment and the defendant, they knew or should have known, on the basis of their training and experience, that they had to obtain the keys to the van to establish the necessary nexus between the defendant's possession of the van and the possession of the drugs.

Moreover, the trial court could reasonably have concluded, as the Appellate Court found, that the officers entered the defendant's apartment with the specific purpose of locating the keys. In the defendant's motion for discovery and inspection, dated April 14, 1987, the defendant requested the state to disclose, inter alia, any oral declarations made "in response to interrogatories by any person then known to the defendant to be a law enforcement officer." On July 10, the state disclosed that "[t]he defendant was asked during the search of her apartment by police if the keys to a van parked outside were in the apartment. The defendant stated, 'I don't know who that van belongs to nor do

I know where the keys are.' " At the hearing on the motion to suppress, DeRiso testified on cross-examination, by defendant's counsel, that he inquired of the defendant herself about the keys shortly after he arrived at the defendant's apartment.

On the basis of this evidence, we conclude that the Appellate Court did not err in concluding that the discovery of the van keys was not inadvertent within the meaning of the plain view exception. There was sufficient evidence in the record for the Appellate Court to have concluded that the trial court could reasonably find that the officers had probable cause to believe that the keys would be discovered in the defendant's apartment. The trial court, in granting the defendant's motion to suppress, stated that "obviously the police officers were at least, loosely, aware that there was some alleged relationship between this van and the alleged activities of the accused, Daisy Hamilton. We then have what might almost be called a gratuitous statement from the state's attorney's office that a question was asked by someone of the accused, about the keys to the van almost immediately after going into the apartment for the search . . . . " The trial court concluded that, on the basis of these facts, discovery of the keys was not inadvertent. The court stated that the police officers "certainly could have asked for [the keys]. They go through a whole litany of things . . . they wished to seize, namely something that was probably taken from some other search warrant . . . instead of stopping and thinking, now is there anything else that we should ask for [that is] related to this case, they just didn't bother to do it. And under the circumstance, I don't think that the keys as seized come in under an exception to the constitutional rights of the accused, namely, the plain view doctrine."

The plain view doctrine was not intended to be used by the police to avoid the warrant requirements in such

circumstances as existed in this case. It was designed to permit the seizure of evidence that could not constitutionally be seized under a search warrant because of the lack of probable cause "and which . . . is likely to disappear or be destroyed if they stop [the search] and leave to obtain a new warrant. This is the 'exigency' which underlies the plain view doctrine, and without this exigency the entire rationale falls." *United States* v. *Hare,* supra, 1295.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.