[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO SUPPRESS ITEMS SEIZED FROM RESIDENCE
 I. INTRODUCTION
Chasity West, the defendant, filed a Second Amended Motion to Suppress dated April 24, 2001 seeking suppression inter alia of items seized from the defendant's residence at 40 Overlook Drive, Windsor. CT Page 7268
The search of the defendant's residence took place on July 17, 1998 and July 28, 1998. In each instance the law enforcement officers were in possession of a search warrant particularly describing the place to be searched and the items to be seized.
The defendant is not attacking the validity of the respective search warrants. The defendant claims relevant to each search that the officers executing the respective search warrants exceeded the authority of the warrants and seized items not specified in said warrants. The defendant asserts the searches herein violate the Fourth Amendment to the U.S. Constitution and Article I Section 7 of the Connecticut Constitution.
The State claims that the items seized in the course of each of the searches were seized pursuant to the "plain view" exception to the warrant requirement and therefore the seizure was not in violation of the state and federal constitutions.
 II. ISSUES
1. Were the items that are the subject of the motion to suppress specified as items to be seized in the respective search warrants? The answer is no.
2. Were the items that are the subject of the motion to suppress seized in accordance with the "plain view" exception to the warrant requirement" The anser is, yes.
The motion to suppress the items that were seized in accordance with the "plain view" exception to the warrant requirement are seized according to law and motion to suppress relevant to those items is hereby denied.
 III. Findings
The court conducted an evidentiary hearing relevant to the motion to suppress.
The parties elected to call only those members of the respective search teams that were assigned the responsibility of photographing those items which other members of the respective search teams selected to be photographed. The witnesses were not the segment of the search team that made the initial discovery of the items in issue. There was no testimony relevant to the condition of the premises and the contents when the respective search teams entered on each occasion to perform the respective search. There was no testimony that the condition of the CT Page 7269 interior of the premises of 40 Overlook Drive, Windsor, were disarray or in any other manner outside the norm.
Accordingly, the court will infer from the evidence presented at the hearing, that when the officers entered on each occasion all drawers were in a closed condition, in place in their respective cabinet, bureau, desk or other place of normal repose. The court further infers that all the items in issue (except A-5, the simonize car wash receipt) were initially located in closed drawers, the drawers were opened by search team members and the items contained therein were most likely moved or otherwise manipulated in order for the search team member to discern the item's content and evidentiary value, if any.
The court makes the following additional findings.
The search of the defendant's residence took place at 40 Overlook Drive, Windsor on July 17 and July 28, 1998. On each occasion the police officers were acting pursuant to a search warrant identifying 40 Overlook Drive, Windsor, as the place to be searched.
Search of July 17, 1998:
The witness, Det. LeBlanc, photographed defense exhibits A-1, through A-7. None of the items, A-1 through A-7 are specified in the search warrant[1] as items authorized to be seized.
Det. Gookin, a member of the search team, did direct Leblanc's attention to the Ames receipt (which is Defendant's Ex. A1 and A3 and State's Ex. 2) in order to have Leblanc photograph it.
The Ames receipt was, at the time the search commenced, in a closed drawer, the drawer depicted in the photograph, and said receipt was located among the items in said drawer and it was necessary for the search team member who located the receipt to move and manipulate the various items in said drawer and did read the contents of the receipt. This investigator displayed the receipt face up on top of the other items in the drawer in order for it to be photographed at the place of location. The Ames receipt was located in a bureau drawer of the southeast bedroom of the defendant. (See Defendant's exhibit B).
Det. Killeran, a member of the search team, did direct Leblanc's attention to the Simonize Car Wash receipt (Defendant's Ex. A5 and State"s Exhibit 1) and it was photographed by LeBlanc. Leblanc testified, and the court so finds, that the reason the photographs were taken of each item was that members of the search team "thought they were significant . . ." CT Page 7270
Leblanc further testified as to his own determination of value. Leblanc indicated that the car wash receipt was dated the date of the crime and the Ames receipt itself was significant because it identified "two pairs of coveralls which were navy" and that the investigators "had information that the individuals involved in this were wearing dark-colored clothing. And there was a flashlight on the Ames receipt, and we knew at that point that the incident took place in the dark hours."
The Simonize Car Wash receipt (defendant's Exhibit A-5) was located on the floor on the west side of the southeast bedroom (see defendant's exhibit B).
The court finds that the writing entitled "Character A" (defendant's exhibit A-2) was located in a bureau in the bedroom of the defendant (See defendant's exhibit B).
The greeting card (defendant's exhibit A-4) was located in a bureau of the defendant's bedroom.
The writing containing a chronology of dates (defendant's exhibits A-6) and the writing containing a list of names (defendant's exhibit A-7) were located in a bureau in the defendant's bedroom.
Leblanc further testified that defense exhibit A-2 (the "Character A" writing), A-6 (writing of sequence of events from 1968 to 1997), A-7 (3 columns of names on sheet), were significant to the investigators. As to Exhibit A-4 (Greeting card) Leblanc testified that it may have evidentiary significance.
Although the investigators were of the opinion the items were significant and had evidentiary value, the items were photographed and not seized because the items were not specified in the warrant. The investigators elected not to seize the items, but to photograph the respective items and apply for a second search warrant specifying that the items photographed were to be seized.
Search July 28, 1998
Det. Buglione, a 5 year member of the major crime squad of Connecticut State Police indicated that he participated in a search of the defendant's residence on July 28, 1998. Buglione's assignment was to take photographs of various items. Buglione took photographs identified as defendant's exhibits C1 through C16. None of the items, C-1 through C-16, are specified in the search warrant[2] as items authorized to be seized. Accordingly, the items depicted in C1 through C16 were not
CT Page 7271 seized.
The following were photographs taken by Buglione during the search of July 28, 1998: C1 (photo depicting a dark folder) located in a desk drawer in defendant's bedroom; C3 through C16 (photographs of typed pages which came out of dark folder depicted in C1). The items (C3 through C16) were placed on a chair by Buglione or others of the search team for the purpose of photographing each. Buglione believed he scanned the typed pages and that the contents did appear to have evidentiary vlaue.
C2 is a photograph depicting a copy of check No. 313 in the amount of $65.15 to Ames on June 7, 1998, located in top dresser drawer of the defendant's bedroom. Buglione testified that C-2 appeared to have evidentiary value in that he knew of the Ames receipt being specified in the warrant as an item to be seized.
The search warrant of July 28, 1998, specified, inter alia, the seizure of the Ames receipt and the Simoniz Car Wash receipt that were observed and evaluated during the July 17th search but not seized on that initial search. Both receipts were seized on July 28, 1998.
 IV. DISCUSSION A. BURDEN OF PROOF
The law enforcement officers rely, for each search, on the issuance of a search warrant by a Superior Court judge. Because the police have done what the federal constitution commands them to do — get a warrant — NewYork v. Class, 475 U.S. 106 (1986); U.S. v. Ventresca, 380 U.S. 102, 112
(1965) the burden, in each instance, rests with the defendant to prove that her rights were violated; See State v. Williams, 169 Conn. 322, 330
(1975). See Lafave, Search and Seizure: A Treatise on theFourth Amendment, Third Edition, § 11.2(b)
The defendant must overcome the presumption of regularity attending the actions of police officers, See Dostson v. Warden, 175 Conn. 614, 402;United States v. Arkoleda, 633 F.2d 985, 990 (2nd circuit 1980), certdenied, 450 U.S. 917 (1981)
It is apparent, therefore, that for a defendant to prevail on (her) claim that evidence obtained by government agents for use against (her) is the product of an unlawful search and seizure, she bears the burden of establishing . . . that the challenged activity was unreasonable. SeeState v. Joyce, 30 Conn. App. 164, 176, 619 A.2d 872 (1993). SeeRawlings v. Kentucky, 448 U.S. 98, 104 (1980). Accordingly, the burden of establishing a prima facie case of unreasonable search and seizure CT Page 7272 rests with the movant, the defendant; once she makes out a prima facie
case, the burden shifts to the government to justify the actions of its agents. See United States v. Wickizer, 633 F.2d 900, 901. (6th Circuit 1980), cert. denied 450 U.S. 935 (1981).
To sum up, the defendant bears the burden of establishing the illegality of police conduct supported by a warrant: e.g., United Statesv. Webster, 750 F.2d 307, 314 (5th Cir. 1984), cert. denied, 471 U.S. 1106
(1985). With respect to the relationship between an illegal search or seizure and specific evidence, a defendant "must go forward with specific evidence demonstrating taint." The government, however, "has the ultimate burden of persuasion to show that its evidence is untainted." Aldermanv. United States, 394 U.S. 165, 183 (1969).
The defendant in the case at bar has carried her burden by establishing a Prima facie case of an unreasonable search and seizure by establishing that certain items seized were not among the items specified in the respective search warrants. The burden shifts to the State to justify the actions of the law enforcement officers. The requisite standard of proof is by a preponderance of the evidence.
B. Plain View
The State claims herein that the items seized fall within the plain view exception to the warrant requirement.
The fourth amendment to the federal constitution requires that search warrants describe with particularity the place to be searched and the persons or things to be seized. However, the description of the items to be seized in a warrant need only be as specific as the circumstances and the nature of the activity under investigation permit. (Citations omitted). State v. Montgomery, 254 Conn. 694, 704 (2000). In construing the terms of a warrant, the circumstances and nature of the activity under investigation dictate a practical margin of flexibility. (Citation omitted). This principle, which applies in the law of the execution of warrants, is consistent with the concomitant principle, which applies in the law of the validity of warrants, that probable cause is to be determined based on the totality of the circumstances, viewed in a common sense and practical manner. (Citation omitted). Furthermore, when policesearch for an item, they are entitled to search any container thatlogically could hold the item sought. (Citation omitted). Id. 704. (Emphasis added).
In Coolidge v. New Hampshire, 403 U.S. 443, 464-73, 91 S.Ct. 2022,29 L.Ed.2d 564 (1971), a plurality of the United States Supreme Court created an exception to the warrant requirement of the fourth amendment CT Page 7273 known as the "plain view" doctrine. This doctrine "is based upon the premise that the police need not ignore incriminating evidence in plain view while they are operating within the parameters of a valid search warrant or are otherwise entitled to be in a position to view the items seized. (Citation omitted). Under Coolidge a plain view seizure is reasonable under the fourth amendment if:
1. the police intrusion which leads us to the view must be legal; Id., at 468.
2. the discovery of evidence must be inadvertent; Id. at 469-471.
3. it is immediately apparent to the police that they have evidence before them. Id. at 466.
We will analyze each of the three tenets of Coolidge separately
First, the police intrusion which leads to the view must be legal. In the case at bar, the police on the occasion of each search were engaged in the execution of search warrants, presumptively valid, the authority of which has not been challenged. Therefore the police in each instance had a legal right to be where they were when they made their observations. There is in each instance of the search a prior justification, by the authority of the warrant, for the intrusion.
An intrusion upon the occupant's expectation of privacy in the premises should extend no further than is necessary to find particular objects, and this is reflected in the rule that the described premises only be searched as long as and as intensely as is reasonable to find the things described in the warrant. The more precisely those things are described in the warrant, the more limited the search of the premises is likely to be. Lafave, supra, § 4.6(a) page 551.
The permissible intensity of the search within the described premises is determined by the description of the things to be seized. The police may go through the premises "with a fine tooth comb" when small easily concealed objects are sought, and that they may move objects to one sidein the course of the search into an area where the described items mightbe found. This means that a search into bureaus . . . desks . . . envelopes, and other hiding places is permissible, but only if at leastone of the items described in the warrant as an object of the searchcould be concealed therein. Lafave, supra, § 4.10(d) pp. 670-672. (Emphasis added).
A review of the language in each of the two warrants in the instant case relevant to the specificity of the items to be seized reveals items CT Page 7274 that could be yet secreted in the areas searched. For example, in the search warrant of July 17, 1998, items specified to be seized, inter alia, are "latex gloves"; in the search warrant of July 28, 1998 items specified to be seized. inter alia, are "floppy discs." The police are entitled to search any container that logically could hold the item sought. For example, the latex gloves could be in any drawer, the floppy discs could be within the dark folder found in a drawer.
In either search there was no indication that the items specified for seizure in the respective warrants were in fact located and seized. Therefore the duration of the search could reasonably be extended. There is no evidence as to the duration of the respective searches.
Furthermore, when police search for an item, they are entitled to search any container that logically could hold the item sought. The drawers opened in the case at bar are plausible repositories for at least some of the items specified to be seized in the respective warrants. The court finds that the items in issue in both searches were encountered while making a search of permissible intensity and duration.
During the course of the respective searches the officers photographed items they believed had evidentiary value but because the items were not specified in the respective warrants as items to be seized the officers chose caution and photographed the specific items with the intent to apply for a subsequent warrant naming these items for seizure. The act of photographing the documents in issue is a form of seizure of the images contained thereon and comes within the plain view exception to the warrant requirement provided the criteria of the plain view doctrine are met. See State v. Magnano, 204 Conn. 259, 267-71 (1987). The plain view doctrine is grounded on the proposition that once police are lawfully in a position to observe an item first hand, its owner's privacy interest in that item is lost; the owner may retain the incidents of title and possession but not privacy. Id.
The second criteria of Coolidge is that the officers discovered the evidence inadvertently. Although a majority of the U.S. Supreme Court has not adopted the inadvertent aspect, most lower courts have adopted it as an essential element of the plain view doctrine. State v. Hamilton,214 Conn. 692, 700. The Connecticut Supreme court adopted the inadvertence limitation and has consistently applied it as an element of the plain view doctrine. Id.; 701. The state supreme court has held, however, that "inadvertence is not required if the items seized fall under the category of contraband, stolen property or objects dangerous in themselves." Id. This case does not involve the seizure of contraband, stolen goods, or objects dangerous in themselves, therefore the inadvertent discovery limitation of the plain view doctrine is applicable CT Page 7275 to the seizures in this case.
The Connecticut Supreme Court has eschewed the Second Circuit Court of Appeals' interpretation of the inadvertence aspect of the plain view doctrine; id 705-06 and finds persuasive the Sixth Circuit Court of Appeals interpretation in United States v. Hare, 589 F.2d 1291, 1294 (6th Cir. 1979). In Hare the court provides an analysis of the inadvertence limitation of the plain view doctrine that the Supreme Court of Connecticut finds persuasive. Ibid, 703-704. In Hare, the court interpreted "inadvertence" in the context of the plain view doctrine to mean "that the police must be without probable cause to believe evidence would be discovered until they actually observe it in the course of an otherwise justified search." Id. 703.
It must be remembered that the only reason plain view seizures are permitted at all is because the intrusion which the Fourth Amendment seeks to guard against has already lawfully occurred (by the authority of the warrant), and the police are faced with a situation in which they observe evidence which they could not have obtained permission to seize, and which now is likely to disappear or be destroyed if they stop and leave to obtain a new warrant. This is the "exigency' which underlies the plain view doctrine, and without this exigency the entire rationale falls. Id. 704.
It is noteworthy that the police in the second search of the residence specified as items to be seized, inter alia, the Ames receipt and the Simonize Car Wash receipt. Although this court finds that these items were come upon by the police "inadvertently" during the first search of July 17, 1998, and the police had authority under the plain view doctrineat that time, to seize the items, the agents elected not to. The plain view doctrine exception to the warrant requirement does not apply to the seizure of the receipts on July 28, 1998, because the items were named in the warrant and therefore there is no inadvertence requirement. The seizure of the receipts on July 28, 1998 was pursuant to, and authorized by the warrant of July 28, 1998.
Although there was no direct testimony concerning the first observations by police of the items seized, the court infers from the evidence presented and any reasonable and logical inferences to be drawn therefrom, that the initial encounter with the items was inadvertent. No evidence was presented from which the court could reasonably infer that the offices had any expectation of finding the items encountered.
The court finds that the officers came upon items in issue during the execution of both warrants inadvertently (except as herein above noted) and thereby satisfied the second Coolidge requirement. CT Page 7276
The third criteria of Coolidge relevant to the plain view exception to the warrant requirement was that "(When) items that were seized were discovered during a lawful search authorized by a valid warrant [and when] they were discovered, it was immediately apparent to the officer that they constituted incriminating evidence. the seizure (is] authorized by the plain view doctrine. State v. Montgomery, 254 Conn. 694, 706.
The commentators have suggested that the "immediately apparent" language of Coolidge was ill advised. Such language suggests an immediacy and level of certainty which does not readily apply to the practical reality of the search situation. Our more recent case law has further, and more practically, defined the "immediately apparent" language of Coolidge. In Montgomery, supra, our Supreme Court held: "The police meet the immediately apparent requirement if, [up]on discovery, they have probable cause to associate the property in plain view with criminal activity without further investigation. (Citation omitted). . . . In other words, objects not named in the warrant, but found within an officer's plain view, may be seized if the . . . officers had a reasonable basis for believing that the seized evidence was reasonably related to the offense which formed the basis for the search warrant. . . . This doctrine is. based upon the premise that police need not ignore incriminating evidence in plain view while they are operating within the parameters of a valid search warrant or are otherwise entitled to be in a position to view the items seized. Id. 706-07.
The testimony provided during the evidentiary hearing on the motion to suppress was severely limited. The state, whose burden it is to justify the actions of the law enforcement officers, chose to rely on the testimony of the officers who were assigned the duty of photographing the items. These items were apparently assessed and identified as items of evidentiary value by others of the search team who preceded the photographers at the scene, the latter of whom were then directed to photograph items.
The defendant has claimed, inter alia, that there was no testimony relevant to the claimed "plain view" initial encounter by the search team with items and the initial seizure. The court would have preferred testimony by members of the search team who initially encountered the items in issue. However, the court is restricted to an assessment of that testimony which was provided. It should be noted that hearsay is admissible in the context of a motion to suppress. The witnesses did testify as to assessments made by others of the team and thereafter testified to their own respective assessment. CT Page 7277
Although there was no testimony offered at the hearing relevant to the initial encounter with the items in issue by members of the search team, the practical reality of the plain view doctrine is that virtually everything the officers encounter while within the scope and authority of the respective search warrants is in plain view. The testimony and all reasonable and logical inferences to be drawn cause the court to find that the items in issue were encountered in plain view. The court also infers from the totality of circumstances provided that the members of the search team upon their initial encounter with the items in issue did move said items about and did manipulate said items in such a manner in order to enable the officer to assess the evidentiary value, if any, of the item. This assessment may include the reading of any writings or entries contained therein.
The defense has asserted, inter alia, that any reading of any document is in itself a separate and distinct search.
This very issue was reviewed in Montgomery, supra. In Montgomery, the police executed a search warrant for the defendant's impounded motor vehicle. The police seized three hand written notes[3] from the vehicle. The notes were found in three different locations of the vehicle. The handwritten notes[4] were not specified in the warrant. Officer Amato in Montgomery found the first note in the glove compartment of the vehicle as he opened the door to that compartment to search it. After reading portions of the note, Amato concluded that it contained evidence relevant to the investigation and seized it. The third handwritten note was observed under the front passenger seat. Amato read portions of the note and left it with the intention of returning with a second warrant specifying the third note and seizing it pursuant to this second warrant. The defense offered no authority in support of their claim that reading the contents in order to assess it was a separate search, nor could the court locate such authority.
In Montgomery, the court concluded that Amato conducted a lawful, cursory examination of the note in order to ascertain its evidentiary value. The court further held that Amato's reading of portions of the note he discovered in the glove compartment was not an additional invasion of the defendant's privacy rights. The court held that the note was in plain view when Amato came upon it in the glove compartment during the execution of a lawful search, and he was entitled to examine it to determine whether it contained evidence subject to seizure under the authority of the first search warrant. Id., 709. The seizure of the third note pursuant to the second search warrant was constitutional. Id.
The court does infer from the instruction by the search team to the photographer to photograph the respective items that the search team, upon CT Page 7278 discovery, had probable cause to associate the property in plain view with criminal activity without further investigation. The respective photographers testified that they likewise determined that the respective items in issue had evidentiary value. These conclusions by the officers were not challenged.
It is noteworthy that the immediate apparency of criminality should be measured, at a minimum, by the collective knowledge of the officers on the scene. Lafave, supra, § 4.11(d) page 709.
The court finds that upon discovery the officers had probable cause to associate the property in plain view with criminal activity (or that it was evidentiary in nature) without further investigation.
Accordingly, the third criteria of Coolidge has been met.
 V. CONCLUSION
The court concludes that the items, in issue, seized during the course of each search were not specified in the respective warrants but were seized pursuant to the "plain view" exception to the warrant requirement and therefore the respective search and seizures were not a violation of state and federal constitutional law. Hence, said items or the images seized by photography are admitted. The State has carried its burden of proof by a preponderance of the evidence. The motion to suppress items seized from the home of the defendant on July 17 and July 28, 1998, is denied.
Miano, J.